Gene Howard WILLIAMS, Plaintiff-Appellee and Cross-Appellant,

v.

Park ANDERSON, Sam Johnston and Dale Gossett, Defendants-Appellants and Cross-Appellees.

Nos. 77-1273, 77-1274.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 26, 1978.

Decided May 8, 1979.

Rehearing Denied July 20, 1979.

Gordon D. McAllister, Jr., Tulsa, Okl. (Goodwin & Goodwin, Tulsa, Okl., on brief), for plaintiff-appellee and cross-appellant.

Kay Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl. (Larry Derryberry, Atty. Gen., Oklahoma City, Okl., on brief), for defendants-appellants and cross-appellees.

Before SETH, Chief Judge, and LEWIS and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a civil rights case based on false imprisonment. The facts are all important.

Gene Howard Williams was received at the Oklahoma State Penitentiary in September, 1971, to serve a two-year sentence

for burglary. On September 11, 1972, Williams was discharged from the burglary sentence. However, Williams never left the penitentiary and was immediately "rebilled" to begin serving a five-year sentence for a rape conviction. The rebilling was based on a judgment and sentence forwarded to the prison by a state court which reflected that a "Gene Williams" had been convicted and sentenced on a rape charge. Pursuant to the conviction and sentence on the rape charge, Williams was thereafter incarcerated until September 12, 1973, when he was released as the result of a state habeas corpus proceeding.

In truth Gene Howard Williams was not the "Gene Williams" who had suffered the conviction on the rape charge. Another inmate in the Oklahoma State Penitentiary, one Harold Gene Williams, was the "Gene Williams" who suffered such conviction.

Based on his unlawful incarceration under the sentence on the rape charge, Gene Howard Williams brought the present civil rights action under 42 U.S.C. § 1983. The named defendants included the State of Oklahoma, the Governor, the State Board of Corrections, the Director of the Board of Corrections, and numerous prison officials, including the Warden of the penitentiary, the Deputy Warden, the Chief of the Classification Department, and one Virgil Choate, the Records Clerk and Timekeeper at the penitentiary. For one reason or another all but three of the defendants were dismissed from the case to the end that when the case went to the jury the only remaining defendants were Park Anderson, the Warden, Sam Johnston, the Deputy Warden, and Dale Gossett, the Chief of the Classification Department. Virgil Choate, the Records Clerk and Timekeeper, who had mistakenly determined that the "Gene Williams" who had been convicted on the rape charge was one and the same as Gene Howard Williams, had, in the intervening time, died.

Trial of the case was to a jury, and the jury returned a general verdict in favor of Gene Howard Williams against Park Anderson, Sam Johnston and Dale Gossett in the sum of $125,000. Anderson, Johnston and Gossett now appeal the judgments entered against them. Williams, by cross appeal, seeks reversal of the trial court's denial of his request for an award of attorney's fees. Our study of the matter convinces us that the evidence is legally insufficient to support the judgments entered, and it is on this basis that we reverse, with directions to dismiss.

Virgil Choate, a long-time prison employee, kept the prison records, and from the record before us it appears quite clearly that it was he who determined that the "Gene Williams" who had suffered the conviction on the rape charge was Gene Howard Williams. Shortly prior to the time that he was rebilled on the rape conviction, Williams learned of the "hold" that had been placed on him, and he wrote several prison officials, including Harold Wilson, who was at that time a deputy warden, protesting that he had not suffered any conviction on a rape charge. Harold Wilson was originally named as a defendant, but at trial he testified as a witness for the plaintiff, and he was later dismissed from the case, over objection, on motion of the plaintiff.

Wilson testified that when he received the letter from Gene Howard Williams he contacted Dale Gossett, the Chief of the Classification Department, and informed Gossett of Williams' letter protesting the "hold order." Gossett indicated that he was aware of the problem, and that he was going to check into it. Wilson testified that he later received a second letter from Williams, and that this time he called Choate directly. According to Wilson, Choate stated that he had checked with the clerk of the committing court and that the Williams who had been convicted on the rape charge was Gene Howard Williams. Wilson also testified that on one occasion he had mentioned the matter to Park Anderson, the Warden, and that the latter indicated that he too knew about Williams' complaint, but that he had checked with Gossett and that it was the plaintiff who had suffered the rape conviction.

In June, 1973, Williams approached Johnston, who was then serving as a deputy warden, and asked to have his time checked. Johnston apparently took Williams to Choate's office and asked Choate to recheck Williams' time. This was the only evidence involving Johnston.

The evidence as a whole established that neither Anderson, the Warden, nor Gossett, the Chief of the Classification Department, had any direct contact with Williams. Williams' own evidence indicated that, upon being advised that Williams was complaining that he was about to be held on a sentence that was not his, each defendant made an effort to confirm Williams' status. In this regard Wilson's testimony was that both Anderson and Gossett had stated that they had or were making inquiry about the matter and that Choate had stated that he had confirmed Williams' status. There is no dispute but that it was Choate's responsibility to confirm the identity and appropriate sentences of inmates. It is clear that Choate himself was firm in a mistaken belief that it was plaintiff who had suffered the conviction on the rape charge, and it is equally obvious from all of the testimony that the defendants relied on Choate.

Johnston, the deputy warden, confirmed that he had talked to Williams on one occasion when the latter had complained that his time had been incorrectly computed, and that he had then taken Williams to Choate and asked the latter to recheck Williams' time.

At the conclusion of the plaintiff's case, the trial court denied defendants' motion for a directed verdict. At the conclusion of all the evidence, defendants renewed their motion for a directed verdict, and the trial court again denied the motion. The trial court's instructions advised the jury as to the essential elements of the plaintiff's case, and further advised the jury that before any of the defendants could be held liable, the jury must find from a preponderance of the evidence that such defendant "personally participated in acts or conduct which deprived plaintiff of his rights as secured by the Constitution of the United States." The jury was also instructed that should it find that the defendants were acting in good faith, then its verdict should be for the defendants. It was in this general setting that the jury returned a general verdict in favor of the plaintiff against all three defendants for $125,000.

As indicated, the jury was instructed that Anderson, the Warden, Johnston, the Deputy Warden, and Gossett, the Chief of the Classification Department, were not to be held liable unless each "personally participated" in acts which deprived Williams of his civil rights. On appeal, Williams does not contend that Anderson, Johnston and Gossett are vicariously responsible for the conduct of Choate, the Records Clerk and Timekeeper at the penitentiary. See in this regard *Kite v. Kelley*, 546 F.2d 334, 336 (10th Cir. 1976). Rather, it is Williams' position that there is sufficient evidence to show that Anderson, Johnston and Gossett were each personally at fault and that it was their misconduct which resulted in Williams' unlawful confinement. We disagree with this contention, and are of the firm view that a fair appraisal of the record clearly indicates that evidence tending to show personal participation on the part of either Anderson, Johnston or Gossett is insufficient to support the judgments entered against them.

It is clear from the record that the "mistake" which resulted in Williams' unlawful confinement was a mistake made by Choate, the timekeeper, now deceased. Choate had been the timekeeper at the penitentiary for many years, and although one witness described Choate as being a bit stubborn, there is nothing in the record to indicate that Choate was careless or error-prone in his keeping of the prison records relating to prisoner release dates. Furthermore, it was not Williams' contention that the defendants failed to maintain an adequate record-keeping system or to hire and supervise competent subordinates. Hence, such cases as *McCollan v. Tate*, 575 F.2d 509 (5th Cir. 1978), *cert. granted sub nom., Baker v. McCollan*, —— U.S. ——, 99 S.Ct. 1015, 59 L.Ed.2d 71 (1979), and *Bryan v.*

*Jones*, 530 F.2d 1210 (5th Cir. 1976), *cert. denied*, 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976) are inapposite.

There are a number of common law false imprisonment cases which suggest that an unlawful failure to release a prisoner will result in tort liability if prison officials knew or should have known of the illegality of the imprisonment. See, e. g., *Sullivan v. Los Angeles*, 12 Cal.3d 710, 117 Cal.Rptr. 241, 527 P.2d 865 (Cal.1974). An alternative holding in *Whirl v. Kern*, 407 F.2d 781, 793 (5th Cir. 1969), *cert. denied*, 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969) suggests a similar conclusion with regard to section 1983. In the instant case, however, although Anderson, Gossett, and possibly Johnston, all knew that Williams *claimed* he was being illegally detained after the expiration of his earlier confinement under a lawful commitment, there is no evidence that either Anderson, Johnston or Gossett *knew* that Williams was in fact being unlawfully confined. Nor is there, in our view, evidence that any of these three *should* have known that Williams was being unlawfully confined. All relied upon Choate, the timekeeper, who was charged with the keeping of the prison records, and there is nothing to indicate that such reliance was unreasonable. So far as the record before us is concerned, this is the first mistake Choate ever made. Under the circumstances, the defendants had the right to rely on Choate, unless we are prepared to hold, which we are not, that the Warden, for example, must personally investigate every complaint that comes his way, and has no right to rely upon the representations of his subordinates. A modern prison cannot be operated in such a fashion. In this general regard, we generally subscribe to the rationale of Judge Brown's concurring opinion in *Bryan v. Jones*, 530 F.2d 1210, 1216 (5th Cir. 1976), where he commented as follows:

> When the law subjects persons as individuals to liability there must be some recognition that the Sheriff, the Chief of Police, or whoever, cannot do it all. He or she must have subordinates, who also have subordinates—each must depend on

the other. Ascending the hierarchy each must depend on reports from those below.

More than that, the Sheriff in such a major institution must even delegate the operational responsibility for the reception, care and detention of the prisoners, including even the time when they get out of jail. We know that with 1600 prisoners and 15 Courts with criminal jurisdiction, each issuing orders concerning detention and release, the Sheriff of Dallas County cannot possibly do everything. There is not enough time, nor enough physical energy in one man, to make daily personal rounds to each Court, the prosecutor's office, the grand jury and jail cells. He must have helpers and once he has established—which he must—a system which eliminates the hazard of mistakes to the maximum reasonable extent, he must depend on the helpers. The law must in some way take that into account.

Since there is the necessity to delegate power and responsibility for the system to function, the Sheriff must have the right to depend upon the inquiries, judgments and reports and frequently actions of subordinates. That makes it essential that the ultimate administrator be able to establish that he had a reasonable basis for his actions and that he acted in good faith, even in depending upon reports or actions that may turn out to be in error.

The evidence in the instant case, taken as a whole, establishes, at most, that the three defendants knew that the plaintiff was complaining about unlawful confinement, and that each thereafter relied upon the representations of Choate, the timekeeper, that plaintiff's confinement was under lawful commitment. There is no evidence which would have imposed a duty on any defendant to go behind the assurances of Choate and make a personal investigation of their own. This is not an instance of "deliberate indifference" on the part of any defendant. *Cf. Martinez v. Chavez*, 574 F.2d 1043 (10th Cir. 1978) and *Williams v. Vincent*, 508 F.2d 541, 546 (2nd Cir. 1974). To the contrary, inquiry was made of the timekeeper, who rechecked the matter and

gave repeated reassurances that Williams was being lawfully confined.

We recognize, of course, that because of his intervening death Choate, the timekeeper, was not able to defend himself at the trial of this matter. However, from the record before us it would appear that the mistake was clearly his and resulted in the wrong done Williams. Under such circumstances these three defendants should not be held liable under the provisions of 42 U.S.C. § 1983 for Choate's error.

Judgments entered against the three defendants are reversed and cause remanded with direction to enter judgments in favor of the defendants and dismiss the action. Williams' cross appeal now being moot, the same is ordered dismissed.