**Correll L. THOMAS, Plaintiff,**

v.

**Police Officer C. DILLARD, Defendant.**

**CASE NO.: 11–CV–2151 CAB NLS**

United States District Court,
S.D. California.

Signed 08/10/2016

Eugene G. Iredale, Iredale & Yoo, APC, San Diego, CA, Mervyn S. Lazarus, Law Offices of Mervyn S. Lazarus, Newport Beach, CA, for Plaintiff.

Randall L. Winet, Winet Patrick and Weaver, Vista, CA, for Defendant.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON CIVIL CODE § 52.1 CAUSE OF ACTION [Doc. No. 65] AND DENYING DEFENDANT'S MOTION TO DISMISS [Doc. No. 68]**

Hon. Cathy Ann Bencivengo, United States District Judge

On June 2, 2016, Plaintiff filed a motion for summary judgment on the Civil Code § 52.1 cause of action. [Doc. No. 65]. On June 23, 2016, Defendant filed a motion to dismiss Plaintiff's state law claims. [Doc. No. 68.] Both motions have been fully briefed. [Doc. Nos. 69, 72, 73 and 74.] On July 28, 2016, a hearing was held with regard to both motions. [Doc. No. 76.] Eugene G. Iredale, Esq. and Mervyn Lazarus, Esq. appeared on behalf of Plaintiff. Randall L. Winet, Esq. appeared on behalf of Defendant. For the reasons stated at the hearing and as set forth below, Plaintiff's motion for summary judgment on the Civil Code § 52.1 cause of action is **GRANTED**, and Defendant's motion to dismiss Plaintiff's state law claims is **DENIED**.

## I. PROCEDURAL HISTORY

This case arises out of a tasing incident that occurred on September 21, 2010. In response to a call, Defendant, Officer

Christopher Dillard, tased Plaintiff, Correll L. Thomas, at the Palomar Community College, Escondido campus. Defendant filed a motion for summary judgment based on his actions and assertion of qualified immunity. [Doc. No. 31.] Plaintiff filed a cross motion for partial summary judgment, seeking summary adjudication of liability on his two claims for relief pursuant to 42 U.S.C. section 1983 for unlawful seizure and excessive force. In addition, Plaintiff sought summary adjudication of liability based on California Civil Code section 52.1.[1] [Doc. No. 34.]

On May 16th, 2013, this Court entered an Order denying Defendant's motion for summary judgment, holding that Defendant was not entitled to qualified immunity. In the same Order, the Court granted Plaintiff's motion for partial summary judgment, holding that Defendant's actions violated Plaintiff's constitutional rights pursuant to 42 U.S.C. section 1983. [Doc. No. 43.] The Court did not rule on Plaintiff's state claim under California Civil Code section 52.1. On May 20, 2013, Defendant filed a Notice of Appeal seeking appellate review of the Court's denial of Defendant's motion for summary judgment and the granting of Plaintiffs motion for partial summary judgment. On May 24, 2013, Plaintiff filed a Motion for Reconsideration as to his request for summary adjudication of liability pursuant to his state law claim. [Doc. No. 50.] On December 11, 2013, this Court ruled that, due to its stay of the action pending appeal, Plaintiff's motion for reconsideration was deemed withdrawn without prejudice. [Doc. No. 60.]

On April 5, 2016, the Ninth Circuit Court of Appeals issued its opinion reversing the denial of Defendant's motion for summary judgment and reversing the partial grant of summary judgment in favor of the Plaintiff. In the ruling, the Ninth Cir-

cuit concluded that, while the Defendant violated Plaintiff's Constitutional Fourth Amendment rights, the Defendant was entitled to qualified immunity for the two federal 42 U.S.C. § 1983 claims alleged by Plaintiff.

On May 24, 2016, the Ninth Circuit Court of Appeals denied Plaintiff's Petition for Rehearing. [Doc. No. 62.]

Following the finality of the Ninth Circuit Court of Appeals' opinion, Plaintiff filed a renewed motion for summary judgment of his state claim under Civil Code section 52.1. [Doc. No. 65.]

## II. MOTION TO DISMISS

■ Defendant argues that, because the federal claims have been resolved, this Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims and dismiss those claims without prejudice. Plaintiff argues that continuing to exercise jurisdiction best serves the relevant values of "economy, convenience, fairness and comity."

28 U.S.C. section 1367 states in pertinent part:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367 (West)

■ Whether to decline to exercise jurisdiction is discretionary. To decline juris-

---

1. This is the Fourth Claim for Relief of the    First Amended Complaint. [Doc. No. 10 at 6.]

diction under § 1367(c)(3), the district court must first identify the dismissal that triggers the exercise of discretion and then explain how declining jurisdiction serves the objectives of economy, convenience and fairness to the parties, and comity. *Trustees of Construction Industry and Laborers Health and Welfare Trust v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003), citing *Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557 (9th Cir.1994). In fact, it may be an abuse of discretion to dismiss where factors of judicial economy, convenience and fairness to the parties strongly point toward retaining jurisdiction and no novel or complicated issue of state law is involved. *See* Schwarzer, Tashima & Wagstaffe, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2016) § 2:921 (citations omitted).

Here, the factors of judicial economy, convenience and fairness all point strongly toward retaining jurisdiction. This case was filed almost five years ago. The parties completed discovery, and this Court made comprehensive findings of fact on cross-motions for summary judgment. The Court of Appeals has also conducted a thorough analysis and concluded that Defendant engaged in an illegal detention and excessive force in violation of the Fourth Amendment. To require Plaintiff to now refile the state law claims based upon the same facts is uneconomical, inconvenient and unfair.

Under 28 U.S.C. section 1367(c)(1), the Court may also decline supplemental jurisdiction if the claim raises a "novel or complex issue of State law." Here, while there is some debate among the District Courts of California about what is required to state a claim under Civil Code section 52.1, the Ninth Circuit has indicated its interpretation of California law on the matter. *See Lyall v. City of Los Angeles*, 807 F.3d

1178, 1196 (9th Cir. 2015). As set forth below, this Court follows the Ninth Circuit's interpretation (which is also the interpretation advocated by Defendant). Therefore, there is no novel issue of state law, and Defendant's motion to dismiss is **DENIED.**

## III. PREVIOUS DISTRICT COURT ORDER

On May 16, 2013, this Court issued an order granting Plaintiff's motion for summary adjudication as to the federal claims and made the following factual findings:

On September 21, 2010 at approximately 3:42 p.m., defendant Christopher Dillard, in the performance of his duties as an officer of the Palomar College Police Department, was dispatched to the Escondido campus of the Palomar Community College to respond to a domestic violence call. (Deposition of C. Dillard, Doc. No. 37–2, at 13:10–22.) Based on the record before the Court, Officer Dillard did not interact with any suspects in relation to this call, but contacted a school administrator in a parking lot on the north side of campus to gather further details. (*Id.* at 15:1–9.) While collecting information regarding this initial dispatch, Officer Dillard received a second call from a dispatcher requesting he "investigate a male wearing a purple shirt pushing a female on the south side of the Escondido campus over by the conex boxes." [Footnote omitted.] (*Id.* at 20:14–19; 22:2–4, 25:3.) There is no indication in the record that Officer Dillard was told that the second call was related to his initial dispatch or involved a common suspect.

On September 21, 2010, plaintiff Correll Thomas, a 19–year-old registered student at Palomar Community College, wearing a purple shirt, was walking with Amy Husky on the south side of the

Escondido campus along a paved road that separates a campus building on its north side from a large campus parking lot on its south side. (Declaration of C. Thomas, Doc. No. 37–5, ¶¶ 2, 3, 6.) This road, or alley as the parties refer to it, connects a campus parking lot west of the building to a main street on the east side of the building. Along the north side of the alley adjacent to the campus building are conex boxes (storage bins) and a biohazard storage container. (See ariel photo view of campus, designated 3, Doc 37–2, at 86 of 91.) The area is an unrestricted public space. (Doc. No. 37–2 at 27:13–19; 74:21–75:2.)

This area is monitored by a security camera. Thomas and Husky were observed that afternoon by a campus security dispatcher on a live video feed. [Footnote omitted.] Starting at approximately 4:12 p.m., the video record shows the couple interacting for about three minutes in the open area of the alley. At approximately 4:15 p.m., Husky led Thomas by the hand into an area behind a storage bin near the biohazard storage container at which time they were no longer visible to the dispatcher. (Doc. No. 37–5, Ex. 2.)

The security dispatcher followed the couple with the camera as they interacted in the alley and initiated the dispatch call to Officer Dillard requesting he "investigate a male wearing a purple shirt pushing a female on the south side of the Escondido campus over by the conex boxes."

Officer Dillard arrived in his police vehicle at approximately 4:19 p.m. based on the video record of the event. (Thomas Decl., Ex. 2.) Officer Dillard and a community service officer, Jesus Montes, who arrived on foot, began to look for the individuals described in the dispatch. Thomas and Husky were not immediately visible to Officer Dillard and Montes. From behind the storage

bin, Husky heard "someone say something about a person in a purple shirt," so Thomas and Husky walked out from behind the storage bin, curious as to what was going on. (Doc. No. 37–5, ¶ 12.)

According to Officer Dillard, neither Thomas or Husky had anything in their hands when he approached them. They were just standing next to each other, perhaps startled by his presence but cooperative. (Doc. No. 37–2, at 49:5–7; 50:7–16.) Officer Dillard testified that he saw no signs of violence between Thomas and Husky. Husky did not appear to be crying or have bruises, scratches, cuts or visible signs of injury. She did not appear upset or distraught. Officer Dillard testified he did not see any indication that there had been violence between Thomas and Husky. (*Id.* at 54:18–53:15; 74:8–20.)

Officer Dillard told Thomas and Husky he was investigating some suspicious activity. (*Id.* at 49:11–13; 65:4–18) He asked if they had identification. (*Id.* at 64:9–14.) Husky did not. Thomas responded that he did, but Officer Dillard did not ask to see Thomas's identification. (Doc. No. 37–5 ¶ 16.) He next asked if Thomas had any weapons. Thomas replied he did not. Officer Dillard then asked Thomas if he would consent to being searched. Thomas declined. (*Id.* ¶ 17.)

Officer Dillard testified that nothing about Thomas's conduct or appearance initiated the request to search him. (Doc No. 37–2 at 73:5–74:7.) Nothing about the situation Officer Dillard encountered objectively indicated any need to search Thomas for weapons. He had not been told by dispatch that weapons were involved and he saw no visible sign that Thomas was armed. (*Id.* at 95:5–10.) Neither Thomas or Husky appeared to be under the influence of drugs or alcohol. Neither was agitated, nor were they

uncooperative when Officer Dillard approached them. There was no evidence of violence, or even a disagreement, between Thomas and Husky. Officer Dillard stated however that he had concluded before he even encountered Thomas and Husky that a weapons' search of the male answering the dispatcher's description would be necessary.

Officer Dillard testified that purely based on the "nature of the call" he received he "feared" Thomas "might have weapons on him." (*Id.* at 73:20–74:1.) By "the nature of the call," Officer Dillard contends he understood at the time that he was responding to a potential domestic violence call related to his initial dispatch to the campus. [Footnote omitted.] Based on his concern that he was investigating a potential domestic violence situation, Officer Dillard predetermined it would be necessary for his safety to verify that Thomas did not have any weapons on his person. (*Id.* at 64:14–65:3; 74:1–7.) Officer Dillard testified that he was "concerned for [his] safety the moment [he] was dispatched to the call." (*Id.* at 75:14–15.) Officer Dillard confirmed that he had no indication that Thomas was armed or had a weapon, his safety concerns were based only on his belief he was answering a potential domestic violence call. (*Id.* at 95:5–10.)

When Thomas declined to submit to a search, Officer Dillard told him he was investigating a male wearing a purple shirt pushing a girl around. (*Id.* at 75:17–76:6.) [Footnote omitted.] Officer Dillard told Thomas he was not under arrest but he needed to make sure Thomas did not have any weapons. (*Id.* at 78:12–24.) He again asked for consent to search Thomas and Thomas again declined.

The record before the Court demonstrates that Officer Dillard was not going to let Thomas leave the scene without submitting to a search for weapons, regardless of the circumstances Officer Dillard actually encountered when he came into contact with Thomas. In response to counsel's inquiry as to when he determined that Thomas would not be leaving the scene without being searched by him, the officer responded,

"Because I was responding to a possible domestic violence it's very likely that even before my arrival I would not let anyone leave unless ensuring that the scene was safe, and the only way I can ensure the scene is safe is by verifying whether the suspect does or does not have weapons. So it is possible, likely I came to the determination before I even arrived on the scene."

(*Id.* at 80:1–11.)

When Thomas declined a second time to consent to a search of his person, Officer Dillard advanced toward Thomas in an attempt to grab his right arm and place Thomas in a controlled hold to force him to submit to a search. (*Id.* at 80:25–81:4, 81:22–82:6.) Thomas retreated a few steps backward. Officer Dillard then withdrew his taser from its holster in an attempt to get Thomas to comply with a search of his person. (*Id.* at 86:2–15.) He hoped the fear of being tased would compel Thomas to comply with this verbal instructions to "put his hands up in the air, to step forward and to drop to his knees slowly." (*Id.* at 87:11–18; 88:3–7.)

Thomas, however, continued to refuse. Thomas's testimony is uncontradicted that he was at no time belligerent or physically aggressive toward Officer Dillard or anyone, he made no threatening or overt movements, and he did not do anything other than repeatedly refuse to submit to a search of his person. (Doc. No. 37–5, ¶¶ 21–23.)

Officer Dillard then "explained to [Thomas] that getting tased hurts, and that it would be much easier if he just complied with [the officer's] verbal commands." (Doc. No. 37–2 at 88:11–14.) Thomas continued to refuse so Officer Dillard requested dispatch send backup from the Escondido Police Department. (*Id.* at 91:25–92:8.) He kept his taser pointed at Thomas.

Officer Beverly Holtz from the Escondido Police Department arrived at the scene. She had very little information about what was actually going on. She saw Officer Dillard holding his taser on Thomas and heard him telling Thomas to get on his knees. Officer Holtz therefore drew her service weapon and held it in a low ready position (pointed at the ground) to cover Officer Dillard. (Deposition of B. Holtz, Doc. No. 37–4 at 25:1–26:13.) Thomas replied to Officer Dillard that he would not get on his knees and would not be searched. His hands were down by his side, and Holtz ordered Thomas to raise his hands. Thomas said no. (*Id.* at 31:5–18.) Officer Holtz then raised her gun and pointed at his center mass and told Thomas to put his hands up or she would use force, at which point Thomas raised his hands above his shoulders. (*Id.* at 32:1–10; 32:24–33:22.)

With his hands up, Thomas was again commanded by Officer Dillard to drop to his knees and was told if he did not comply by the count of three he would be tased. (*Id.* at 35:10–21.) Dillard counted, Thomas did not comply and Officer Dillard deployed his taser. Thomas fell to the ground, Officer Holtz handcuffed him and Officer Dillard conducted his search for weapons. No weapons were found. (Doc No. 37–2 at 96:12–22; 109:9–16.)

After Thomas was placed in the police car, Officer Dillard interviewed Amy Husky. Husky informed him that she and Thomas had been dating for approximately eight months. Husky and Thomas were kissing and having privacy behind the storage bins. She stated that at one point Thomas had gently pushed her and said they were just playing around. Based on his interview of Husky, Officer Dillard determined domestic violence did not occur. (*Id.* at 111:3–18.)

[Doc. No. 43 at 2–7.]

## IV.   NINTH CIRCUIT OPINION

The Ninth Circuit found no error in this Court's factual findings. The Ninth Circuit also found that defendant Dillard violated the Fourth Amendment rights of Mr. Thomas:

> We therefore hold Dillard violated Thomas' Fourth Amendment rights against unreasonable seizure by detaining him for the purpose of performing a Terry frisk .... We further hold Dillard used excessive force when he tased Thomas in order to force him to submit to the Terry frisk against his consent. Given the frisk was unlawful and unnecessary, Dillard used unreasonable force.

*Thomas v. Dillard*, 818 F.3d 864, 871 (9th Cir. 2016).

Because the panel determined that the law on *Terry* frisks in this specific factual context was not sufficiently "clearly established" at the time of the violations, however, it reversed the grant of summary judgment on the 42 U.S.C. § 1983 causes of action on the basis of qualified immunity. *Id.* at 886, 891.

## V.   RENEWED MOTION FOR SUMMARY JUDGMENT

This Court did not rule on Plaintiff's previous motion for summary adjudication as to the Civil Code section 52.1 claim and, therefore, it was not addressed by the Ninth Circuit. As a result, the section 52.1 claim (as well as the other state law claim

for negligence)[2] remain pending. Plaintiff has now renewed his motion for summary judgment as to liability as to the section 52.1 claim, based on the same evidence as that on which this Court and the Ninth Circuit found Fourth Amendment violations for unlawful seizure and excessive force. Plaintiff further argues that, unlike Section 1983 claims, Civil Code section 52.1 provides no defense of qualified immunity. Therefore, Plaintiff argues, this Court's finding of unlawful seizure and excessive force requires entry of judgment for Plaintiff on the section 52.1 cause of action as a matter of law.

A. Law of the case.

Civil Code section 52.1, states in pertinent part:

(a) If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated.

(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

Cal. Civil Code section 52.1 (a) and (b).

■ Plaintiff argues that this Court's factual findings, that Defendant violated Plaintiff's Fourth Amendment right to be free from unlawful detention and excessive force, equally show that Defendant acted by "threat of force, intimidation and coercion" and is therefore liable, as a matter of law, for a violation of Civil Code section 52.1. Plaintiff further argues that the Ninth Circuit's findings that Defendant violated Plaintiff's Fourth Amendment rights are law of the case and *res judicata*.

Defendant does not disagree that the findings of a Fourth Amendment violation are law of the case. Rather, Defendant argues that, to succeed on a Section 52.1 claim, Plaintiff must prove more than just a violation of a right. According to Defendant, Plaintiff must prove coercion, threat or force *independent* from the coercion inherent in the violation of a right.

While there is a split in the District Courts of California regarding what is re-

---

**2.** At the hearing, Plaintiff's counsel stated that the negligence claim would not be pursued.

quired to state a cognizable claim under Civil Code section 52.1, the Ninth Circuit recently noted that "[n]umerous California decisions make clear that a plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015)(citations omitted). However, the Ninth Circuit also recognized that, under California law, where an arrest is unlawful and excessive force is applied in making the arrest, there has been coercion "independent from the coercion inherent in the wrongful detention itself." *Id.*, citing *Bender v. County of Los Angeles*, 217 Cal. App.4th 968, 977, 159 Cal.Rptr.3d 204 (2013).

In *Bender v. County of Los Angeles*, 217 Cal.App.4th at 977–979, 159 Cal.Rptr.3d 204, the California Court of Appeals noted:

> Defendants contend, as a matter of law, Fourth Amendment rights are not among the constitutional rights protected ·by the Bane Act, unless some other constitutional right is violated at the same time. They reason a defendant cannot "interfere by threats, intimidation, or coercion" with a plaintiff's Fourth Amendment right to be free from an unreasonable seizure, because "coercion is inherent" in any unlawful seizure. . . .
>
> Coercion is, of course, inherent in any arrest, lawful or not. But we need not weigh in on the question whether the Bane Act requires "threats, intimidation or coercion" beyond the coercion inherent in every arrest, or whether, when an arrest is otherwise lawful, a Bane Act claim based on excessive force also requires violation of some right other than the plaintiff's Fourth Amendment rights.

Where, ·as here, an arrest is unlawful and excessive force is applied in making the arrest, there has been coercion "independent from the coercion inherent in the wrongful detention itself" (*Shoyoye*, supra, 203 Cal.App.4th [947]at p. 959, 137 Cal.Rptr.3d 839 [ (2012) ])—a violation of the Bane Act.

> We emphasize this is not a case involving the use of excessive force during an otherwise lawful arrest based on probable cause. Nor is it a case involving an unlawful arrest or detention, but without any coercion beyond the coercion inherent in any arrest. (See *Shoyoye*, supra, 203 Cal.App.4th at p. 959, 137 Cal. Rptr.3d 839.) Here, the Bane Act applies because there was a Fourth Amendment violation—an arrest without probable cause—accompanied by the beating and pepper spraying of an unresisting plaintiff, i.e., coercion that is in no way inherent in an arrest, either lawful or unlawful. . . .
>
> Here, there clearly was a showing of coercion separate and apart from the coercion inherent in an unlawful arrest. Deputy Sorrow wrongfully detained and arrested plaintiff, because he had no probable cause to believe plaintiff had committed any crime. But, in addition, Deputy Sorrow deliberately and unnecessarily beat and pepper sprayed the unresisting, already handcuffed plaintiff. That conduct was not the coercion that is inherent in a wrongful arrest. . . .

217 Cal.App.4th at 977–979, 159 Cal. Rptr.3d 204.

The situation here is analogous to *Bender*. Dillard violated Plaintiff's Fourth Amendment rights by unlawfully detaining him for the purpose of performing a *Terry* frisk.[3] Dillard then used excessive force to

---

3.  As stated by the Ninth Circuit, "[o]nce Dillard initiated Thomas' detention for the purpose of a weapons frisk, the constitutional violation was complete." *Thomas*, 818 F.3d at 888.

coerce Plaintiff to submit to the unlawful *Terry* frisk. Pursuant to *Bender*, 217 Cal. App.4th at 977–979, 159 Cal.Rptr.3d 204, this is a violation of Section 52.1.

At the hearing, Defendant's counsel argued that the tasering of Plaintiff was all part of the unlawful *Terry* frisk and, therefore, could not constitute the "independent coercion" required for a section 52.1 violation. However, *Bender* makes clear that, an unlawful detention accompanied by unnecessary, deliberate and excessive force is sufficient to state a Bane Act violation. 217 Cal.App.4th at 977–979, 159 Cal.Rptr.3d 204. Here, it is now a matter of law that Dillard committed an unlawful detention, and then used excessive force to coerce Plaintiff into submission. Therefore, Plaintiff has proven a violation of the Section 52.1.

**B. No Qualified Immunity for Civil Code section 52.1.**

■ There is no qualified immunity defense available to a defendant for a Civil Code section 52.1 cause of action. *See Venegas v. County of Los Angeles*, 153 Cal.App.4th 1230, 1243–48, 63 Cal.Rptr.3d 741 (2007)("For the reasons discussed above, we hold qualified immunity of the kind applied to actions brought under 42 U.S.C. section 1983 does not apply to ac-

tions brought under Civil Code section 52.1."); *Liberal v. Estrada*, 632 F.3d 1064, 1076 (9th Cir. 2011).

Defendant argues that, while there may not be qualified immunity, there are several statutory immunities that apply to the Civil Code section 52.1 claim, including Penal Code section 847(b), Government Code section 821.6, Government Code section 820.4, Government Code section 820.6 and Government Code section 820.2. However, none of these statutory immunities apply to this case.

■ First, Penal Code section 847(b)[4] does not apply because this is not a claim for false arrest or false imprisonment. Plaintiff never brought a claim for the *arrest* effected after the tasing. Rather, the claims center on the threats and intimidation to coerce Plaintiff into an illegal search. Penal Code section 821.6[5] does not apply because this is not a claim for malicious prosecution. *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 719–721, 117 Cal.Rptr. 241, 527 P.2d 865 (1974) (Government Code section 821.6 is intended to protect government employees only from liability for tort of malicious prosecution). Government Code Section 820.6[6] does not apply because Defendant was not enforcing an unconstitutional statute or

**4.** Penal Code section 847 states in pertinent part:

> (b) There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer or federal criminal investigator or law enforcement officer described in subdivision (a) or (d) of Section 830.8, acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances:
>
> (1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful.
>
> Pen. Code, § 847

**5.** Penal Code section 821.6 states:

> A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.
>
> Gov. Code, § 821.6

**6.** California Government Code section 820.6 states:

> If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for an injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable.
>
> Gov. Code, § 820.6

regulation. Government Code section 820.2 [7] also does not apply because Defendant was not engaged in a "policy" decision. *See Taylor v. Buff*, 172 Cal.App.3d 384, 390, 218 Cal.Rptr. 249 (1985)("Under *Gov. Code, § 820.2*, affording immunity for an injury resulting from a public employee's act or omission which was the result of the exercise of discretion, immunity will be conferred with respect to a basic policy decision, or activity which may be characterized as the "planning" rather than the "operational" level of decisionmaking").

■ Finally, Penal Code section 820.4 [8] does not apply because it requires the public employee to have acted reasonably. *Bell v. State of California*, 63 Cal.App.4th 919, 929, 74 Cal.Rptr.2d 541 (1998). Here, the Ninth Circuit found that Defendant's conduct in violation of the Fourth Amendment was objectively unreasonable. *Thomas*, 818 F.3d 871. Defendant argues that, by granting qualified immunity for the federal claims, the Ninth Circuit ruled that Defendant's belief that the *Terry* stop was lawful was reasonable. This ruling, argues Defendant, equates to "due care" under section 820.4. However, just because Defendant's *belief* was reasonable does not mean that his *conduct* was reasonable. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2158–59, 150 L.Ed.2d 272 (2001)(the standard of reasonableness for purposes of qualified immunity is distinct from the standard of reasonableness embodied in the Fourth Amendment). Moreover, if a reasonable belief under qualified immunity equates to "due care" under Section 820.4, then this would essentially provide the qualified immunity that *Venegas* says does not exist for Section 52.1 claims. 153 Cal. App.4th at 1243–48, 63 Cal.Rptr.3d 741. [9]

Finally, Defendant's argument regarding section 820.4 is contrary to California law, which denies statutory immunity to police officers who use excessive force. *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 215, 285 Cal.Rptr. 99, 814 P.2d 1341 (1991); *Robinson v. Solano County*, 278 F.3d 1007, 1016–1017 (9th Cir. 2002)(*en banc*). Here, excessive force was used to coerce Plaintiff into an unlawful search and, therefore, no immunity applies.

## VI. CONCLUSION

For the reasons set forth above and at oral argument, Plaintiff's motion for summary judgment as to liability as to the Civil Code section 52.1 claim is **GRANTED**, and Defendant's motion to dismiss the state law claims is **DENIED**.

The parties shall contact the chambers of Magistrate Judge Stormes within three days of this order to schedule a settlement conference. If the case does not settle, the

---

7. California Government Code section 820.2 states:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused. Gov. Code, § 820.2

8. California Government Code section 820.4 states:

> A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee

from liability for false arrest or false imprisonment.
Gov. Code, § 820.4

9. The only authority Defendant cites for the proposition that § 820.4 applies to an excessive force case is *Reynolds v. County of San Diego*, 858 F.Supp.1064 (S.D. Cal. 1994), *affd. in part and remanded in part*, 84 F.3d 1162 (9th Cir. 1996), *overruled on other grounds in Acri v. Varian Associates*, 114 F.3d 999, 1001 (9th Cir. 1997). However, in *Reynolds*, the Section 52.1 claim was dismissed for failure to state a claim. 858 F.Supp. at 1074. The immunities were applied to other state law claims such as negligence. *Id.* at 1074–1075. Therefore, *Reynolds* is not applicable.

Magistrate Judge shall issue a scheduling order setting pretrial dates for the remaining issue of Plaintiff's damages for the section 52.1 violation.

**IT IS SO ORDERED.**