[L.A. No. 30251. In Bank. Nov. 4, 1974.]

JACK SULLIVAN, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Hugh R. Manes for Plaintiff and Appellant.

John H. Larson, County Counsel, Philip H. Hickok, Peter R. Krichman and Thomas H. Warden, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**TOBRINER, J.**—This case presents the question whether an individual who is confined in a county jail beyond his proper jail term may maintain an action for false imprisonment against the county or whether such a suit is barred by the governmental immunity provisions of the California Tort Claims Act. The superior court concluded that the governmental immunity sections precluded the action, but, as will appear, we have determined that that decision was in error; accordingly we conclude that the judgment must be reversed.

Plaintiff Jack Sullivan instituted the present action against defendant County of Los Angeles as a result of his alleged confinement in Los Angeles County jail for several days beyond the termination of his sentence. The confinement grew out of the following circumstances.

On June 6, 1967, plaintiff was arraigned in municipal court on a misdemeanor charge of contributing to the delinquency of a minor in violation of Penal Code section 272; he entered a not guilty plea to the charge. The following day plaintiff pled guilty to a separate drunk driving charge (Veh. Code, § 23102, subd. (a)) and was sentenced to pay a fine of $250 plus penalty assessment or serve 50 days in city jail. Plaintiff did not pay the fine and began serving the 50-day drunk driving sentence on June 7, 1967.

On June 20, while plaintiff was serving his drunk driving sentence, the municipal court cónsolidated the charge of contributing to the delinquency of a minor with two felony charges pending against plaintiff and transferred the charges to the superior court. On July 13 plaintiff's motion to dismiss the two felony counts was granted; the contributing to the delinquency of a minor charge was transferred back to municipal court and was dismissed on July 21. The municipal court issued an order to the sheriff to release plaintiff immediately after that dismissal but no release order had been issued by the superior court when the felony charges were dismissed on July 13.[1] Plaintiff's 50-day drunk driving sentence expired on July 26[2] but because no release order had been issued by the superior court plaintiff remained in jail until August 7. He was finally freed only after writing to the superior court for the unissued release order.

Plaintiff then brought this action for false imprisonment against the county predicated upon the sheriff's failure to release him. Plaintiff alleged in his amended complaint that he was imprisoned in the county jail by county sheriffs and employees who acted "with knowledge . . . that there were no charges of any kind pending against [him] and that [he] was entitled to his [release] and freedom" or who "in the exercise of reasonable care . . . should have known that there were no charges of any kind pending against [him] . . . and that [he] was entitled to his release and freedom . . ."[3]

---

[1]Plaintiff was in jail on a remand order which requires that he be held in custody until another court order releasing him or fixing his sentence is issued.

[2]Plaintiff, subtracting five days for good behavior, claims the sentence actually was completed on July 22, rather than on July 26. This dispute, however, bears only on the extent of damages and is not relevant here.

[3]The court below properly took judicial notice of relevant files, records and documents of the superior and municipal courts which disclosed that felony charges against plaintiff were dismissed by the superior court on July 13, 1967, but that no release order was issued to the sheriff until August 7, 1967. That fact does not defeat plaintiff's allegation that the sheriff *actually knew* or in the exercise of due care *should have known* that charges against plaintiff had been dismissed and that his continued incarceration was illegal. That no release order was sent merely forecloses one possible source of the sheriff's alleged knowledge but is not sufficient to defeat plaintiff's allegation that the sheriff had knowledge.

In passing on the motion for judgment on the pleadings the trial court improperly involved itself in the merits of whether the sheriff actually had knowledge that appellant was being illegally detained in prison. The trial judge stated in the course of argument on the motion that "[a]s a practical matter, I am going to make the assumption that there is no proof . . . that the Sheriff knew . . . that there were no charges pending against [plaintiff]." The issue of proof of knowledge did not arise before the trial court nor does it arise before us. For purposes of reviewing the judgment on the pleadings we must accept as true plaintiff's allegation that the sheriff had the requisite

The trial court granted the county's motion for judgment on the pleadings on the ground that under *Watson* v. *County of Los Angeles* (1967) 254 Cal.App.2d 361 [62 Cal.Rptr. 191] and section 821.6 of the Government Code, the county was immune from liability for acts of county employees in instituting or prosecuting a criminal proceeding. Plaintiff thereafter appealed.

For the reasons which follow we conclude that plaintiff has stated a cause of action against the County of Los Angeles. If, at a subsequent trial, plaintiff can prove the alleged facts, the county will be both directly and derivatively liable for injury caused to plaintiff by his false imprisonment. ■ No immunity provision in the California Tort Claims Act insulates the county from liability for false imprisonment.

1. *The county's failure to release plaintiff after dismissal of all charges against him, as mandated by Penal Code section 1384, renders it directly liable under Government Code section 815.6.*

Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." ■ In this case plaintiff alleges injury due to defendant's failure to release him from jail after dismissal of all charges against him. Penal Code section 1384 speaks precisely to this situation: "If the court directs the action to be dismissed, the defendant *must*, if in custody, be discharged therefrom; . . ." (Italics added.)

Two Court of Appeal cases have applied section 815.6[4] in situations very similar to the instant case. In *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863], plaintiff was kept in jail after sufficient bail had been posted for his release in disregard of the mandatory duty to release on posting of bail provided in Penal Code section 1295. The Court of Appeal held that failure of the city to perform its statutorily imposed mandatory duty to release plaintiff rendered it directly liable for

knowledge. (See *Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3]; 4 Witkin, Cal. Procedure (2d ed.) § 162, pp. 2817-2818.)

[4]Hereafter, unless otherwise indicated, all section references are to the Government Code.

damages under section 815.6. The mandatory duty to release on bail was designed to protect against the very injury which occurred.

Similarly in *Bradford* v. *State of California* (1973) 36 Cal.App.3d 16 [111 Cal.Rptr. 852], employees of the State of California failed to record the fact that charges had been dismissed against the plaintiff; as a result he was rearrested. The Court of Appeal held that Penal Code sections 11116 and 11116.6 imposing a mandatory duty upon the state to record such dismissals, were intended to avoid the danger of possible future illegal arrest and incarceration. The state could not claim immunity from liability for damages arising out of its failure to perform a mandatory duty imposed by statute.

In the case before us plaintiff alleges that county employees retained him in jail after all charges against him had been dismissed despite the mandatory duty of Penal Code section 1384. Plaintiff alleges that he suffered precisely the kind of injury that section 1384 purports to prevent: continued incarceration. Therefore, assuming the truth of the allegations of imprisonment, Government Code section 815.6 imposes direct liability upon the county for plaintiff's damages unless the county can demonstrate that "it exercised reasonable diligence to discharge the duty."

The county contends, however, that, assuming the applicability of section 815.6, section 844.6, subdivision (a)(2) bars the present action. That section provides: "Notwithstanding any other provision of this part, . . . a public entity is not liable for: . . . (2) An injury to any prisoner." In our opinion the county mistakenly argues that because plaintiff was a "prisoner"[5] at the time he was allegedly falsely imprisoned, the section bars recovery for any "injury"[6] resulting from the false imprisonment.

In a false imprisonment case, the "injury" suffered by an individual is the illegal confinement itself rather than any detriment occurring after imprisonment; in other words, false imprisonment is not an "injury to a prisoner" but instead is an injury to a non-prisoner which converts him into a prisoner.

---

[5]Section 844 provides: "As used in this chapter, 'prisoner' includes an inmate of a prison, jail or penal or correctional facility."

[6]Section 810.8 provides: " 'Injury' means death, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person."

Although the county emphasizes that plaintiff had already been confined in jail at the time of the alleged false imprisonment, the Legislature surely did not intend to distinguish between an individual who is wrongfully deprived of his liberty before his jail term starts and one wrongfully deprived of his liberty after his jail term ends. Continued confinement cannot legally make him a "prisoner" when the jail term has expired; in the eyes of the law plaintiff is no longer a "prisoner." ■ In short, we conclude that section 844.6's reference to "an injury to any prisoner" does not apply to a case of *false* imprisonment; the section accordingly, in the instant case, does not immunize the county.

2. *If, as alleged, the county sheriff knew or should have known that all charges against plaintiff had been dismissed, the county is derivatively liable for the sheriff's wrongful failure to release him.*

Under the facts alleged in the complaint, the county also faces derivative liability for plaintiff's alleged false imprisonment. Government Code section 820 provides that, unless immunized by statute, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." Section 815.2 extends that employee liability to the public entity.[7] Indeed, section 820.4 deals specifically with liability for false imprisonment; it declares immunity for public employees for their non-negligent acts "in the execution or enforcement of any law" but provides that "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment." ■ Thus if the county sheriff[8] is liable as a public employee under sections 820 and 820.4 for his alleged failure to release plaintiff from jail after all charges against him were dismissed, then the county will be derivatively liable for those acts under section 815.2.

■ Under California common law the jailer has long been held liable for false imprisonment if he knew or should have known of the illegality

---

[7]Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

"(b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[8]Plaintiff might have, but did not, base his claim against the county upon an allegation that the county clerk negligently failed to issue the release order. Plaintiff apparently concluded that *Watson* v. *County of Los Angeles* (1967) 254 Cal.App.2d 361 [62 Cal.Rptr. 191], discussed *infra,* immunized the county clerk. Since, as we note *infra,* we disapprove the *Watson* holding, plaintiff on remand may seek leave to amend his complaint to include this alternative ground for liability.

of the imprisonment. In *Abbott* v. *Cooper* (1933) 218 Cal. 425, 429-430 [23 P.2d 1027] this court held a jailer liable for damages for false imprisonment because he "knew or should have known" from statements of the arresting officers of the illegality of the arrest. (See also *Smith* v. *Madruga* (1961) 193 Cal.App.2d 543, 546 [14 Cal.Rptr. 389].) And more recently, in *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375, 386 [40 Cal.Rptr. 863], the Court of Appeal found a city derivatively liable for false imprisonment based upon the acts of city employees in holding the plaintiff in jail after payment of bail for his release.

A similar result was reached in *Whirl* v. *Kern* (5th Cir. 1969) 407 F.2d 781, certiorari denied 396 U.S. 901 [24 L.Ed.2d 177, 90 S.Ct. 210] in which the plaintiff sued a sheriff for deprivation of civil rights because of false imprisonment. In *Whirl* plaintiff was kept in jail for nine months after the dismissal of felony charges against him. The sheriff who detained him did not receive the usual individual dismissal notice from the court in plaintiff's case although he did receive, instead, a group listing of dismissals which included plaintiff's name. The sheriff claimed he did not know plaintiff's name was on the list.

In holding the sheriff liable for false imprisonment, the *Whirl* court stated: "The responsibility for a failure of communication between the courts and the jailhouse cannot justifiably be placed on the head of a man immured in a lockup when the action of the court has become a matter of public record. Ignorance and alibis by a jailer should not vitiate the rights of a man entitled to his freedom. . . . [U]nlike his prisoner, the jailer has the means, the freedom, and the duty to make necessary inquiries. [¶] . . . The tort of false imprisonment is an intentional tort. [Citation omitted.] It is committed when a man intentionally deprives another of his liberty without the other's consent and without adequate legal justification. [Citations omitted.] Failure to know of a court proceeding terminating all charges against one held in custody is not, as a matter of law, adequate legal justification for an unauthorized restraint. Were the law otherwise, Whirl's nine months could easily be nine years, and those nine years, ninety-nine years, and still as a matter of law no redress would follow. The law does not hold the value of a man's freedom in such low regard. [¶] The sheriff, of course, must have some protection too. His duty to his prisoner is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained." (407 F.2d at p. 792.)

We reaffirm the test for false imprisonment liability stated in our earlier decisions and illustrated in the *Whirl* case. If the sheriff "knew or should have known" that plaintiff's incarceration was unlawful because all charges against him had been dismissed, then the sheriff is liable for false imprisonment. The test requires either that the sheriff have actual knowledge that the imprisonment of the plaintiff is unlawful or alternatively that he have some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration. (Cf. Rest. 2d Torts, § 45, com. b.) The slight burden which this duty imposes upon the sheriff must be viewed in light of plaintiff's overriding interest in avoiding unjustified incarceration. As the *Whirl* court stated: "The law does not hold the value of a man's freedom in such low regard." (407 F.2d at p. 792.) It is slight solace for the deprivation of one's liberty to be told that the jailer carelessly failed to follow his instructions to unlock the jailhouse door.

The county argues that its sheriff can never be held liable for false imprisonment despite the common law rule of liability because the sheriff enjoys immunity under Government Code section 821.6. That section provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The county apparently views the section's reference to "instituting or prosecuting any judicial . . . proceeding" as sufficiently broad to encompass retaining a person in jail although no criminal proceedings remain pending against him. This argument erroneously interprets the scope of section 821.6.

In the first place, the plain meaning of the language in section 821.6 demonstrates that the section does not encompass the retaining of a person in prison beyond his term. According to Webster's Third New International Dictionary (1961) "institute" means "to originate and get established . . . [to] initiate," and "prosecute" means "to institute legal proceedings against; *esp*: to accuse of some crime or breach of law or to pursue for redress or punishment of a crime or violation of law in due legal form before a legal tribunal." Thus, viewed literally, the language of the section does not reach the act of holding a person in jail beyond his term.

Second, and more importantly, the history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for *malicious prosecution* and not for *false imprisonment*. The Senate Committee comment to the section states that "The California courts have repeatedly held . . . public employees immune from liability for this sort of conduct. [Citing several California cases which deal with public

employee immunity from malicious prosecution suits: *White* v. *Towers* (1951) 37 Cal.2d 727 [235 P.2d 209]; *Coverstone* v. *Davies* (1952) 38 Cal.2d 315 [239 P.2d 876]; *Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494] and one case dealing with public entity immunity for malicious prosecution: *Dawson* v. *Martin* (1957) 150 Cal.App.2d 379 [309 P.2d 915].] This section continues the existing immunity of public employees; and, because no statute imposes liability on public entities for malicious prosecution, public entities likewise are immune from liability."

■ Malicious prosecution "consists of initiating or procuring the arrest and prosecution of another under *lawful process*, but from *malicious motives* and *without probable cause.* . . . [Italics in original.] The test is whether the defendant was actively instrumental in causing the prosecution." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 242, pp. 2522-2523.) Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime. (*Rupp* v. *Summerfield* (1958) 161 Cal.App.2d 657, 663 [326 P.2d 912]; *Centers* v. *Dollar Markets* (1950) 99 Cal.App.2d 534, 544-545 [222 P.2d 136].) Similarly the suits against government employees or entities cited by the Senate Committee in commenting upon section 821.6 all involve the government employees' acts in filing charges or swearing out affidavits of criminal activity against the plaintiff.[9] No case has predicated a finding of malicious prosecution on the holding of a person in jail beyond his term or beyond the completion of all criminal proceedings against him.

Furthermore, the Senate Committee comment to section 821.6 states that the section "continues the existing immunity of public employees . . . ." While government employees were, prior to the enactment of that section, immune from liability for malicious prosecution, they were not immune from charges of false imprisonment and were liable for knowingly imprisoning a person without proper legal authority. (*Abbott* v. *Cooper* (1933) 218 Cal. 425 [23 P.2d 1027]; *Oppenheimer* v. *City of Los*

---

[9]Thus in *Hardy* v. *Vial* (1957) 48 Cal.2d 577, 580 [311 P.2d 494] defendants filed an affidavit with the college which employed plaintiff accusing plaintiff of immoral acts and thereby procuring his dismissal from teaching. *Coverstone* v. *Davies* (1952) 38 Cal.2d 315, 319 [239 P.2d 876] involved a defendant deputy sheriff who had arrested the plaintiff and signed an affidavit alleging criminal violations. In *White* v. *Towers* (1951) 37 Cal.2d 727, 728-729 [235 P.2d 209, 28 A.L.R.2d 636] the defendant Fish and Game Commission investigator signed a sworn affidavit claiming plaintiff had violated water pollution laws. Finally, in *Dawson* v. *Martin* (1957) 150 Cal.App.2d 379, 381 [309 P.2d 915] defendant building inspector swore to a complaint charging plaintiff with two violations of the county building code.

*Angeles* (1951) 104 Cal.App.2d 551 [232 P.2d 30].) Therefore, at the time of the enactment of section 821.6 no existing immunity attached to false imprisonment which could be continued under that section.

Our narrow interpretation of section 821.6's immunity, confining its reach to malicious prosecution actions, finds corroboration in another governmental immunity provision, section 820.4 discussed above. That section grants public employees immunity for their nonnegligent acts in executing or enforcing any laws but specifically provides that "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment." The preservation of liability for false imprisonment in this corollary section demonstrates that the California Torts Claims Act distinguishes false imprisonment and malicious prosecution. It recognizes the previously existing immunity of public employees from liability for malicious prosecution but saves the existing liability for false imprisonment.

The case of *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863] supports this interpretation. In *Shakespeare* the plaintiff was held in jail after sufficient bail had been posted for his release. He sued for both malicious prosecution and false imprisonment. The Court of Appeal held that section 821.6 barred the malicious prosecution action but that section 820.4 specifically preserved the false imprisonment action.

Ignoring the *Shakespeare* case, defendant county here relies solely upon *Watson* v. *County of Los Angeles* (1967) 254 Cal.App.2d 361 [62 Cal. Rptr. 191]. In *Watson* the plaintiff completed a 30-day sentence and was released. Because the county clerk failed to record plaintiff's completion of his sentence, plaintiff was rearrested and imprisoned again. In affirming the dismissal of plaintiff's subsequent false imprisonment action, the Court of Appeal reasoned that the clerk's failure to record service of the sentence was the first step toward plaintiff's subsequent arrest and incarceration and therefore came within the scope of "instituting or prosecuting a criminal proceeding" under section 821.6

The *Watson* decision, however, has been soundly criticized by the principal architect of the California Tort Claims Act, Professor Van Alstyne, for its failure to distinguish between malicious prosecution and false imprisonment. As Professor Van Alstyne observes: "Watson, unfortunately, fails to recognize or explain how its conclusion can be squared with the distinction made in the California Tort Claims Act between malicious prosecution [citation omitted] and false imprisonment [citation omitted], or with the clear legislative history [citation omitted] demonstrating that

section 821.6 codified the recognized common law immunity of prosecutors and other law enforcement officers from malicious prosecution actions, in order to prevent interference with their discretionary and quasi-judicial responsibility for institution and prosecution of enforcement proceedings. Nor does the court attempt to explain how the defendants' negligence in the ministerial recordkeeping can be transmuted into the kind of discretionary determination—to initiate proceedings against the plaintiff—which the immunity was designed to safeguard." (Van Alstyne, Cal. Government Tort Liability Supplement (Cont.Ed.Bar 1969) § 5.63, pp. 24-25.) ■ In accordance with Professor Van Alstyne's criticism, we specifically disapprove the *Watson* decision.[10]

Since section 821.6 cannot be interpreted to defeat the common law liability for false imprisonment preserved in section 820.4, the county sheriff remains liable for his alleged knowing imprisonment of appellant.[11] Under section 815.2 the sheriff's liability is in turn attributed to his employer, the county.

■ We conclude that the County of Los Angeles is potentially liable for its alleged false imprisonment of plaintiff both independently under section 815.6 and derivatively under sections 820, 820.4 and 815.2. Since no provision for governmental immunity protects the county in an action for false imprisonment, the trial court erred in dismissing plaintiff's cause of action.

The judgment is reversed and the cause is remanded to the trial court for proceedings consistent with this opinion.

Wright, C. J., Mosk, J., and Sullivan, J., concurred.

---

[10]We also disapprove *Herndon* v. *County of Marin* (1972) 25 Cal.App.3d 933 [102 Cal.Rptr. 221] and *Apelian* v. *County of Los Angeles* (1968) 266 Cal.App.2d 550 [72 Cal.Rptr. 265] to the extent that these decisions rely on the *Watson* holding.

[11]The county also asserts that Penal Code section 847 grants the sheriff immunity. That section provides that no peace officer shall be civilly liable for false arrest or false imprisonment arising out of an arrest when such arrest is lawful. This section does not aid the county, however, both because the validity of the initial arrest in this case is not contested by the plaintiff and because an unlawful detention after a lawful arrest is alone sufficient to give rise to a cause of action for false imprisonment. (*Moore* v. *City & County of San Francisco* (1970) 5 Cal.App.3d 728, 735 [85 Cal.Rptr. 281].)

The county did not contend, nor could it have successfully contended, that the sheriff was protected by section 820.2 immunity from liability for discretionary acts. Release of a prisoner after dismissal of charges against him is nondiscretionary since it is specifically mandated by Penal Code section 1384. (Cf. *Elder* v. *Anderson* (1962) 205 Cal.App.2d 326, 331 [23 Cal.Rptr. 48].)

**BURKE, J.**—I dissent. The Legislature has made it quite clear that public entities are wholly immune from liability for any injuries to persons confined in prisons or jails, including injuries to the person, reputation, character or feelings of persons falsely imprisoned by police or prison authorities. The obvious intent of the statutory provisions which I discuss below was to provide to the public entity a broad immunity for the acts and omissions of its agents in their dealings with persons confined in prisons or jails. There is simply no basis whatever for holding, as the majority do, that persons unlawfully confined in prison cannot be considered "prisoners" under the applicable legislation. This unsound analysis could drastically undermine the legislative intent to provide broad immunity in this area, for a public entity could be held liable for all kinds of injuries to persons able to prove that they were injured while unlawfully confined in prison.

The Legislature devoted a separate chapter of the 1963 Tort Claims Act to "Police and Correctional Activities" (Gov. Code, § 844 et seq.). Section 844.6 sets forth the general rule of immunity, providing that "Notwithstanding any other provision of this part [relating to liability of public entities and employees], except as provided in this section and in [other sections not here pertinent], a public entity is not liable for: . . . (2) An injury to a prisoner. . . . (d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. . . ."

Thus, section 844.6 immunizes public entities from liability for an "injury" to a "prisoner." Liability of the public *employee*, is unaffected by the section; in fact, another section provides that although a public employee is not liable for an act or omission, "exercising due care, in the execution or enforcement of any law," the section further provides that "Nothing in this section exonerates a public employee from liability for false arrest *or false imprisonment*." (Italics added.) Therefore, plaintiff herein may indeed have a cause of action for false imprisonment against various public employees. The question before us, however, is whether a cause of action lies against defendant county by reason of plaintiff's allegedly false imprisonment. As noted above, if plaintiff was a "prisoner" at the time of his false imprisonment, section 844.6 would immunize defendant county from liability for any "injury" he suffered as a result thereof.

The majority evidently concede that false imprisonment constitutes an "injury" within the meaning of section 844.6, since that term is broadly defined in section 810.8 to mean "death, injury to a person, damage to or loss of property, *or any other injury that a person may suffer to his*

*person, reputation, character, feelings or estate,* of such nature that it would be actionable if inflicted by a private person." (Italics added.) Clearly, one who is falsely imprisoned suffers damages identical in nature to those described in section 810.8.

It should be equally apparent that plaintiff herein was a "prisoner" under section 844.6. The majority's contrary holding ignores the plain language of the act. Thus, section 844 provides that "As used in this chapter [which includes § 844.6], 'prisoner' includes *an inmate of a prison, jail* or penal or correctional facility." (Italics added.) The record discloses that plaintiff was indeed an inmate (as distinguished from a guard, guest or visitor) of Los Angeles County jail during the period of his allegedly false imprisonment. It seems inescapable that defendant county is immune from liability to plaintiff by reason of section 844.6.

The majority seek to escape the inescapable by reasoning that ". . . false imprisonment is not an 'injury to a prisoner' but instead is an injury to a non-prisoner which converts him into a prisoner." (*Ante,* p. 716.) This peculiar logic appears based upon the unfounded and unprecedented assumption that plaintiff had become a "non-prisoner" once his term had expired. Yet a "prisoner" is an "inmate of a . . . jail" (§ 844), and it is uncontradicted that plaintiff remained an inmate throughout the period in question *despite his claim of illegal confinement.*

The majority thus would narrowly construe the term "prisoner" to refer to one *lawfully* restrained. Yet the courts have refused to construe the term narrowly; "On the contrary, almost every popular dictionary as well as law dictionary and encyclopaedic work, states in words or substance that a prisoner is a person 'under arrest,' 'in custody,' 'in jail,' 'in prison'; *in short, one who is being restrained involuntarily.* The test is not whether he has been informed against, indicted, arraigned, tried or convicted." (Italics added; *Datil* v. *City of Los Angeles,* 263 Cal.App.2d 655, 659 [69 Cal.Rptr. 788]; see *Sava* v. *Fuller,* 249 Cal.App.2d 281 [57 Cal.Rptr. 312].) Likewise, in the instant case, the test should not be whether the person has been properly or lawfully confined, or whether he has already served his term of confinement. Rather, it is the fact of confinement itself, and not the legality thereof, which renders one a "prisoner" under section 844.6.

Since the provisions of section 844.6 immunize defendant county from the instant suit, there is no need to consider the application of other sections of the Tort Claims Act upon which liability might be based. By its terms section 844.6 immunity overrides "any other provision" in the act, in-

cluding the sections relied upon by the majority in parts 1 and 2 of their opinion.

I would affirm the judgment.

McComb, J., and Clark, J., concurred.