Filed 5/24/22; Certified for Publication 6/9/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARAKKALAGE THARAL D. SILVA et al., <br><br>     Plaintiffs and Appellants, <br><br>     v. <br><br> RICHARD SCOTT LANGFORD et al., <br><br>     Defendants and Respondents. | B312660 <br><br> (Los Angeles County Super. Ct. No. 20STCV04867) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Huey P. Cotton, Judge.  Affirmed in part, reversed in part, and remanded with directions.

    Law Offices of Ali Taheripour and Ali Taheripour; Law Offices of Les T. Zador and Leslie T. Zador for Plaintiffs and Appellants.

Rob Bonta, Attorney General, and Danielle F. O'Bannon, Assistant Attorney General, for Defendants and Respondents Richard Scott Langford and State of California, acting by and through the California Highway Patrol.

_____

Plaintiffs Marakkalage Tharal D. Silva and Shirin Ramesha Silva (the Silvas) appeal from a judgment of dismissal entered as to defendants State of California, acting by and through the California Highway Patrol (CHP), and CHP Sergeant Richard Scott Langford (together, the CHP defendants), after the trial court sustained without leave to amend the CHP defendants' demurrers to the Silvas' first amended complaint. The Silvas asserted on behalf of their deceased son Danuka Neshantha Silva[1] claims for negligence and wrongful death after Langford's patrol car struck and killed Danuka while Langford was responding to an emergency call concerning an altercation on the freeway. The trial court found the claims against the CHP defendants were barred by investigative immunity conferred under Government Code section 821.6 (section 821.6).

On appeal, the Silvas contend the trial court erred in sustaining the CHP defendants' demurrers because section 821.6 immunity is limited to claims for malicious prosecution pursuant to *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710 (*Sullivan*), and Court of Appeal decisions applying the immunity

_____

[1]     We refer to Danuka Neshantha Silva by his first name to avoid confusion.

to other torts committed by law enforcement officers in the course of an investigation were wrongly decided.

We affirm the trial court's order sustaining Langford's demurrer based on the Silvas' concession at oral argument that Langford is entitled to immunity as an emergency responder under Vehicle Code section 17004. However, because Vehicle Code section 17001 provides an independent statutory basis for CHP's liability based on Langford's alleged negligence, we do not reach the scope and application of section 821.6 immunity, and we reverse the judgment as to CHP and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The First Amended Complaint*

The Silvas filed this action on February 5, 2020. The operative first amended complaint alleges causes of action for negligence and wrongful death, as well as a survival cause of action (Code Civ. Proc., § 377.10 et seq.) against rideshare driver Muhammad Ragowo Reiditio, the CHP defendants, Uber Technologies Inc. (Uber), and Raiser LLC.[2] The Silvas also asserted a cause of action against CHP for public entity liability for the tort of a public employee (Gov. Code, § 815.2, subd. (a)),[3]

---

[2] Raiser LLC appears to be related to Uber.

[3] All further undesignated statutory references are to the Government Code. Section 815.2, subdivision (a), provides, "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this

3

in which they allege Langford violated Vehicle Code section 22350 (basic speed law), for which CHP was liable under Vehicle Code section 17001 (public entity liability for negligent or wrongful operation of a motor vehicle by a public employee).

As alleged in the first amended complaint, at approximately 3:37 on the morning of October 14, 2019, Danuka was riding with another passenger in the back of a rideshare vehicle driven by Reiditio for Uber.  While driving westbound on U.S. Highway 101 near Encino, Reiditio pulled into the number one lane of the freeway, abruptly stopped the vehicle, and demanded that Danuka and the other passenger get out of the vehicle.  Reiditio refused to drive the vehicle onto the shoulder or to an exit ramp before forcing the passengers to disembark. While Danuka was attempting to cross the eastbound lanes of traffic on the freeway to get to safety, he was struck and killed by the CHP patrol vehicle driven by Langford in the scope of his employment.  Langford was driving at an excessive speed without activating his patrol car's lights and sirens at the time he struck Danuka.

The Silvas' original complaint also alleged Langford had a duty to operate the patrol vehicle "when responding to a call to a standard of reasonable care associated with officers who routinely respond to such calls" and "it was the duty of an officer to exercise even greater and more reasonable care . . . when

---

section, have given rise to a cause of action against that employee or his personal representative."  However, section 815.2, subdivision (b), provides, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

4

responding to a call." These allegations were omitted from the first amended complaint.

B.    *The CHP Defendants' Demurrers*

Langford and CHP each demurred to the first amended complaint, arguing the complaint was barred by investigative immunity conferred under section 821.6. Section 821.6 provides, "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." They argued the original complaint alleged Langford was "'responding to a call'" when he struck Danuka, and although the allegations were omitted from the first amended complaint (after defense counsel raised section 821.6 immunity during the meet and confer process), the Silvas were bound by their original allegations under the sham pleading doctrine.[4] Langford's "call-response [was] the quintessence of embarking upon an investigation of the circumstances prompting the call for law enforcement assistance," and was immunized under section 821.6. Langford also argued the claims against him were barred by emergency responder immunity under Vehicle Code section 17004. CHP asserted the Silvas' claims against it were barred under Government Code sections 821.6 and 815.2, subdivision (b).

---

[4]    See *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 425 ("Under the sham pleading doctrine, plaintiffs are precluded from amending complaints to omit harmful allegations, without explanation, from previous complaints to avoid attacks raised in demurrers or motions for summary judgment.").

5

In opposition, the Silvas argued section 821.6 immunity did not apply because Langford "was not instituting or prosecuting any judicial or administrative proceeding within the scope of his employment," and he was not yet investigating anything when he struck Danuka. The Silvas requested the trial court take judicial notice of the investigative report as evidence their amendment was not a sham pleading because the report found that two other CHP officers were on patrol the morning of the accident and responded to emergency calls of a stopped vehicle and potential fight on the freeway, whereas Langford heard the emergency calls while inside CHP's West Valley Office, and on his own initiative he drove to the scene to see if the first-responding officers "needed an additional hand."[5] Because Langford was not responding to a call, he was not entitled to immunity under Vehicle Code section 17004, nor was he exempt from immunity as an emergency responder under Vehicle Code section 21055 because he failed to activate his patrol car's lights and sirens.

After a hearing, on April 15, 2021 the trial court sustained the CHP defendants' demurrers without leave to amend. The court found the CHP defendants were immune under section 821.6 because Langford "by plaintiffs' own admission and evidence was responding to a call." The Silvas failed to meet their burden to show the original allegations were a mistake

---

[5] The investigative report found Langford was responding to a physical altercation between two Uber passengers, when Danuka crossed the traffic lanes of the freeway and ran into the path of the patrol car. The report concluded Danuka caused the accident, but Langford operated his car in excess of 65 miles per hour without activating his patrol car's lights and sirens, in violation of Vehicle Code section 22349, subdivision (a).

6

justifying correction in the amended pleading, and to the contrary, the investigative report showed that although "[Langford] was likely not specifically dispatched to the scene," he was "on his way to the call to provide back up if needed, [and] [t]his is not a case where [Langford] was merely driving around on patrol and happened upon [Danuka]." The court concluded that although the Courts of Appeal had primarily applied section 821.6 to immunize prosecuting attorneys, the section had been construed broadly to immunize torts committed in the course of police investigations, including by police officers, citing *Lawrence v. Superior Court* (2018) 21 Cal.App.5th 513, 526 (section 821.6 immunized CHP from liability for releasing a vehicle impounded during an investigation to the wrong claimant). The trial court did not address the parties' arguments under the Vehicle Code.

On May 12, 2021 the trial court entered a judgment of dismissal in favor of the CHP defendants. The Silvas timely appealed.[6]

---

[6] On May 11, 2021, prior to the entry of the judgment of dismissal, the Silvas filed a notice of appeal from a "[j]udgment of dismissal after an order sustaining a demurrer," attaching the trial court's April 16, 2021 ruling. We consider the Silvas' premature notice of appeal a valid "notice of appeal filed after judgment is rendered but before it is entered," and treat the notice as filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(1); see *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607.)

7

# DISCUSSION

A.   *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord, *Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1150 (*Ko*).)

A trial court abuses its discretion by sustaining a demurrer without leave to amend where "'there is a reasonable possibility that the defect can be cured by amendment.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; *Ko, supra,* 58 Cal.App.5th at p. 1150.) "'"The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal."'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132; accord, *Ko,* at p. 1150; see *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

8

"'"[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense."'" (*Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 992; accord, *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 [application on demurrer of affirmative defense of statute of limitations based on facts alleged in a complaint is a legal question subject to de novo review]; *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 223 ["'It must appear clearly and affirmatively that, upon the face of the complaint [and matters of which the court may properly take judicial notice], the right of action is necessarily barred.'"].)

B.      *Langford Is Immune from Suit Under Vehicle Code Section 17004 as an Emergency Responder*

Langford contends, the Silvas concede, and we agree Langford is immune from suit under Vehicle Code section 17004 as an emergency responder. Vehicle Code section 17004 provides, "A public employee is not liable for civil damages on account of personal injury to or death of any person or damage to property resulting from the operation, in the line of duty, of an authorized emergency vehicle while responding to an emergency call . . . , or when responding to but not upon returning from a fire alarm or other emergency call." At oral argument, the Silvas' attorney conceded the first amended complaint adequately alleged Langford was operating his patrol car in the line of duty and was responding to an emergency call when he struck Danuka, and the Silvas' action against Langford is therefore barred by emergency responder immunity under Vehicle Code section 17004. Accordingly, although the trial court sustained Langford's

9

demurrer on a different basis, Langford's dismissal was proper. (*Carman v. Alvord, supra*, 31 Cal.3d at p. 324; *Ko, supra*, 58 Cal.App.5th at p. 1150.)

C.     *The Trial Court Erred in Sustaining CHP's Demurrer*

     1.     *Investigative immunity under section 821.6*

Section 821.6 was adopted in 1963 as part of the California Government Claims Act and was intended to codify governmental immunities recognized at common law. (See *Sullivan, supra*, 12 Cal.3d at p. 720.) As the Senate Judiciary Committee report on Senate Bill No. 42 (1963 Reg. Sess.) explained as to section 821.6, "The California courts have repeatedly held public entities and public employees immune from liability for this sort of conduct. [Citations.] This section continues the existing immunity of public employees; and, because no statute imposes liability on public entities for malicious prosecution, public entities likewise are immune from liability." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42, 2 Sen. J. (1963 Reg. Sess.) p. 1890.) The Senate Judiciary Committee cited to four cases, including *White v. Towers* (1951) 37 Cal.2d 727 (*White*), in which the Supreme Court addressed the public policy behind common law investigative immunity. As the *White* court reasoned, "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the

10

investigative or accusatory level would wreak untold harm." (*Id.* at pp. 729-730.)

In 1973 the Supreme Court considered section 821.6 for the first time in *Sullivan, supra*, 12 Cal.3d 710. In *Sullivan*, the plaintiff brought an action for false imprisonment against the Los Angeles County Sheriff, asserting the plaintiff was jailed for longer than his sentence due to administrative errors. (*Id.* at pp. 713-714.) The Supreme Court reversed the judgment for the county entered by the trial court based on section 821.6 immunity, holding the section did not immunize the sheriff for liability for false imprisonment, and accordingly, the county could be liable for the sheriff's conduct under section 815.2, subdivision (b). (*Sullivan*, at p. 717.) The Supreme Court reasoned, "[T]he history of section 821.6 demonstrates that the Legislature intended the section to protect public employees from liability only for malicious prosecution and not for false imprisonment. . . . [T]he suits against government employees or entities cited by the Senate Committee in commenting upon section 821.6 all involve the government employees' acts in filing charges or swearing out affidavits of criminal activity against the plaintiff. No case has predicated a finding of malicious prosecution on the holding of a person in jail beyond his term or beyond the completion of all criminal proceedings against him." (*Id.* at pp. 719-720, italics and footnote omitted.) The court's "narrow interpretation of section 821.6's immunity, confining its reach to malicious prosecution," was supported by the governmental immunity provision in section 820.4 for executing or enforcing the laws, which contained an exception that "'[n]othing in this section exonerates a public employee from

11

liability for false arrest or false imprisonment.'" (*Sullivan*, at p. 721.)

In the decades since *Sullivan* was decided, the Courts of Appeal have consistently interpreted section 821.6 to provide immunity beyond the tort of malicious prosecution. (See, e.g., *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 193 [university police officers were immune from claim for conversion after officers while executing a search warrant destroyed disks containing software engineer's work where the engineer was not a suspect or named in the warrant]; *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1208 (*Amylou*) [county was immune from liability on sexual assault victim's claims for intentional and negligent infliction of emotional distress where investigating officers told victim's friends and neighbors that she gave an inconsistent and incomplete account of her alleged rape]; *Jenkins v. County of Orange* (1989) 212 Cal.App.3d 278, 283 [social worker and county were immune from liability for negligence and negligent infliction of emotional distress based on removal of minor from his parents' home during an investigation into reports of child abuse]; *Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 456 (*Randle*) [county, district attorney, and police officer were immune from liability for negligent performance based on the alleged suppression of exculpatory evidence].) And in *Strong v. State of California* (2011) 201 Cal.App.4th 1439, 1461 this court held section 821.6 immunized a CHP officer (and CHP under section 815.2, subdivision (b)) against an accident victim's spoliation claim after the officer filed a false police report declaring the victim was at fault for a traffic accident, in an effort to cover up the fact he had lost information identifying the other vehicle that was involved.

The Supreme Court has only once considered section 821.6 immunity in the nearly 50 years since *Sullivan* was decided. In *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 748 the court held immunity under section 821.6 extended to prevent a plaintiff from recovering damages for false arrest attributable to the period in which the plaintiff was incarcerated after he was arraigned on criminal charges. The court observed that although section 821.6 had been primarily applied to immunize prosecuting attorneys and similarly-situated individuals, it also "'applies to police officers as well as public prosecutors since both are public employees within the meaning of the Government Code.'" (*Asgari*, at p. 757, quoting *Randle, supra*, 186 Cal.App.3d at page 455.) The court also cited *Baughman v. State of California, supra*, 38 Cal.App.4th at page 192 and *Amylou, supra*, 28 Cal.App.4th at page 1211 for the proposition that immunity under section 821.6 "is dependent on how the injury is caused." (*Asgari*, at p. 757.) Although the *Asgari* court did not address the application of section 821.6 beyond the torts of malicious prosecution, false arrest, and false imprisonment, it is notable that the court cited *Randle*, *Baughman*, and *Amylou* (as well as *Jenkins v. County of Orange, supra*, 212 Cal.App.3d 278) approvingly, all of which held section 821.6 immunity applied to other torts. (See *Asgari*, at pp. 755, fn. 9, 757.)

The Supreme Court will again consider section 821.6 immunity in its pending review of *Leon v. County of Riverside* (2021) 64 Cal.App.5th 837, 841, review granted Aug. 18, 2021, S269672 (*Leon*).[7] In *Leon*, the widow of a shooting victim brought

_____

[7] The Supreme Court granted review on the question, "Is immunity under Government Code section 821.6 limited to

13

an action for negligent infliction of emotional distress against the county based on the failure of the responding sheriff's deputies to cover the body of her husband, which lay in full public view on the driveway for more than eight hours with the husband's genitals exposed as the deputies investigated the shooting. (*Leon*, at p. 841.) In affirming the grant of summary judgment for the county, Division Two of the Fourth Appellate District broadly applied section 821.6, concluding "[a]ll of the evidence adduced on the county's motion for summary judgment shows that the deputies' negligence, if any, in failing to promptly cover or remove [the victim's] body from the scene, occurred during the course of the deputies' performance of their official duties to secure the area following the shooting and the deputies' and other law enforcement officers' investigation of the shooting." (*Id.* at p. 848.) The Court of Appeal in *Leon* rejected arguments similar to those advanced by the Silvas that *Sullivan* expressly limited section 821.6 immunity to claims for malicious prosecution and that *Amylou, Baughman*, and other cases broadly interpreting section 821.6 were wrongly decided. (*Leon, supra*, 64 Cal.App.5th at pp. 853-855, review granted.)

In a concurring opinion in *Leon*, Justice Raphael observed that the Ninth Circuit and federal district courts in California have interpreted *Sullivan* to limit section 821.6 immunity to claims for malicious prosecution. (*Leon, supra*, 64 Cal.App.5th at p. 859, review granted [conc. opn. of Raphael, J.]; see *Sharp v. County of Orange* (9th Cir. 2017) 871 F.3d 901, 920-921; *Garmon v. County of Los Angeles* (9th Cir. 2016) 828 F.3d 837, 847.)

---

actions for malicious prosecution? (See *Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710.)" (*Leon, supra*, S269672.)

14

Justice Raphael questioned whether the text of section 821.6 supported personal injury tort immunity, noting the statute refers to injuries "caused by [a public employee] instituting or prosecuting any judicial or administrative proceeding" but observed the Courts of Appeal had broadly applied the immunity to torts that preceded the institution of proceedings and were "related to" but not "caused by" the institution of proceedings. (*Leon,* at p. 863 [conc. opn. of Raphael, J.].)  Notwithstanding these concerns, Justice Raphael concluded the court's opinion "correctly articulates the reasoning of decades of opinions that not only have cabined the Supreme Court's *Sullivan* opinion to its facts, but have also expanded section 821.6's absolute immunity to police officer conduct in investigations." (*Id.* at pp. 863-864.)

On appeal, the Silvas contend that section 821.6 immunity does not cover personal injury torts committed in the course of an investigation, and even if it did, the first amended complaint only alleged that Langford was on his way to investigate a call of a vehicle stopped on the freeway when he struck Danuka, not that the investigation had commenced.  We agree this case raises significant questions concerning both the scope and application of section 821.6 immunity.  However, we need not decide these issues because Langford is immune from suit under Vehicle Code section 17004, and as to CHP, it may be liable under Vehicle Code section 17001.  (See *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970, fn. 7 [because trial court properly sustained demurrer on grounds that complaint failed to state a claim, Supreme Court did not need to consider alternative bases for sustaining demurrer, including public entity immunities].)

15

2. *The trial court erred in sustaining CHP's demurrer without considering CHP's liability under Vehicle Code section 17001*

Even if Langford was immune from suit under section 821.6 (in addition to his immunity under Vehicle Code section 17004), it does not follow that CHP is immune. Section 821.6 immunity, like Vehicle Code section 17004 immunity, expressly applies only to a "public employee." Government Code section 815.2, subdivision (b), extends an employee's immunity to the public entity in certain circumstances: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." In many cases the Courts of Appeal have applied section 821.6 to public entities through application of Government Code section 815.2, subdivision (b). (See, e.g., *Leon, supra*, 64 Cal.App.5th at p. 846, review granted; *Strong v. State of California, supra*, 201 Cal.App.4th at p. 1449; *Baughman, supra*, 38 Cal.App.4th at p. 191; *Amylou, supra*, 28 Cal.App.4th at pp. 1208-1209.)

However, this case differs from those applying section 821.6 immunity to public entities in that it involves a vehicular injury. The Silvas contend, and we agree, CHP's immunity does not necessarily flow from any investigative immunity Langford may have under section 821.6 because the language in Government Code section 815.2, subdivision (b), limiting immunity where "otherwise provided by statute" applies here. Specifically, Vehicle Code section 17001 provides a separate statutory basis for CHP liability: "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful

16

act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment."

In closely analogous circumstances, the Supreme Court in *Brummett v. County of Sacramento* (1978) 21 Cal.3d 880, at pages 885 through 886 (*Brummett*) rejected a public entity's argument that Government Code section 815.2, subdivision (b), immunized the entity from liability under Vehicle Code section 17001 for injuries caused by its police officers during a high-speed chase, even though the police officers enjoyed first-responder immunity under Vehicle Code section 17004. The court explained that in considering whether Government Code section 815.2, subdivision (b), applies, "[t]he question . . . is whether liability is 'otherwise provided by statute.' It must be answered in the affirmative. Vehicle Code section 17001 makes a public entity liable for its employee's negligence in the operation of a motor vehicle."[8] (*Brummett*, at p. 883; accord, *City of Sacramento v. Superior Court* (1982) 131 Cal.App.3d 395, 400 [city was not immune from suit under Government Code section 815.2, subdivision (b), for police officers' alleged negligence in vehicle pursuit, explaining "[t]he specific provision for public entity liability in Vehicle Code section 17001 overrides the general derivative immunity provided by Government Code section 815.2"].) In reaching this conclusion, the Supreme Court considered the legislative history of the Government Claims Act

---

[8]     The *Brummett* court observed that the determination whether the police officers were negligent in the operation of their vehicles depended on whether they exercised due care, a question of fact for the jury. (*Brummett, supra*, 21 Cal.3d at p. 887.)

17

and observed that the Senate Judiciary Committee commented as to Government Code section 815.2, "'The exception appears in subdivision (b) because under certain circumstances it appears to be desirable to provide by statute that a public entity is liable even when the employee is immune. . . .'" (*Brummett*, at p. 885, quoting Sen. Com. on Judiciary, Rep. on Senate Bill No. 42, 2 Sen. J. (1963 Reg. Sess.) pp. 1887-1888.)  Further, as the *Brummett* court explained, the Judiciary Committee specifically referred to liability of public entities under both Government Code section 815 (enacted at the same time as Government Code section 815.2) and Vehicle Code section 17001.  (*Brummett,* at p. 885 ["'In other codes there are a few provisions providing for the liability of governmental entities, e.g., Vehicle Code section 17001, et seq.'"], quoting Sen. Com. on Judiciary, Rep. on Senate Bill No. 42, 2 Sen. J. (1963 Reg. Sess.) pp. 1886-1887; see *Thomas v. City of Richmond* (1995) 9 Cal.4th 1154, 1165 [observing in context of liability for injuries caused by a police car chasing a fleeing suspect, that Government Code section 845.8's immunity provision applicable to public employees and entities (for injuries resulting from a person escaping custody or resisting arrest) "does not provide immunity to public entities for liability that is predicated on Vehicle Code section 17001"].)

CHP argues *Brummett* did not decide whether a public entity's liability under Vehicle Code section 17001 supersedes the entity's immunity derived from the public employee's immunity under section 821.6, instead focusing on the public employee's immunity under Vehicle Code section 17004.  CHP urges us instead to follow *Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 643, in which the Court of Appeal held that the Department of Forestry and Fire Protection

18

was immune from tort liability under Government Code section 850.4—which immunizes public entities and employees from liability "'for any injury caused in fighting fires,'" "'except as provided in'" Vehicle Code section 17000 et sequitur—where the plaintiffs were engulfed in a wildfire after their vehicle broke down and the firefighters placed them inside the firefighter's fire truck. The court reasoned there was a "latent ambiguity" in Government Code section 850.4 because "a literal interpretation of statute would . . . produce absurd consequences the Legislature did not intend" and "eliminate a very large portion of the immunity the Legislature intended to confer under section 850.4." (*Varshock*, at p. 644.)

The Supreme Court's decision in *Brummett* is directly on point; *Varshock* is not. *Varshock* involved immunity under the Government Code provision applicable to firefighters and their public employers, not derivative immunity under Government Code section 815.2, subdivision (b), and the case was atypical in that the plaintiffs' injuries did not arise from a vehicular tort as generally envisioned under Vehicle Code section 17001. (See *Varshock v. Dept. of Forestry & Fire Prot., supra*, 194 Cal.App.4th at pp. 649-650 [Government Code section 850.4 immunity exists "when a firefighter operates a motor vehicle at the scene of a fire as part of efforts to rescue persons or property from the fire or otherwise combat the fire," but "immunity under section 850.4 does not apply, and potential liability under the Vehicle Code section 17001 exception exists, if injury results from a firefighter's tortious act or omission in the operation of a motor vehicle while proceeding from another location to a fire in response to an emergency call"].) By contrast, *Brummett* instructs that derivative entity immunity under Government

19

Code section 815.2, subdivision (b), does not overcome the entity's liability under Vehicle Code section 17001.  We see no reason why the nature of the employee's underlying immunity—whether the employee is responding to an emergency (Veh. Code, § 17004) or investigating a crime (§ 821.6)—would support a different result.

Here, the first amended complaint specifically alleged CHP was liable under Vehicle Code section 17001.  Thus, it was CHP's burden in its demurrer to establish its affirmative defense of governmental immunity.  (*Heshejin v. Rostami, supra,* 54 Cal.App.5th at p. 992; *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 726; *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 183.)  Yet CHP's only argument in its demurrer with respect to Vehicle Code section 17001 was that it was shielded by the investigatory immunity applicable to Langford under section 821.6 and public entity immunity under Government Code section 815.2, subdivision (b).  Because Government Code section 815.2, subdivision (b), does not immunize CHP from liability under Vehicle Code section 17001, the trial court erred in sustaining CHP's demurrer as to the Silvas' fourth cause of action for public entity liability for injuries caused by its employees.

## DISPOSITION

The judgment is affirmed as to Langford and reversed as to CHP. The matter is remanded for the trial court to vacate its order sustaining the demurrers of Langford and CHP and to enter a new order sustaining Langford's demurrer and overruling CHP's demurrer, and to enter a new judgment in favor of only Langford. The parties are to bear their own costs on appeal.


                                FEUER, J.

We concur:


    PERLUSS, P. J.


    SEGAL, J.

Filed 6/9/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARAKKALAGE THARAL D. SILVA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> RICHARD SCOTT LANGFORD et al., <br><br> Defendants and Respondents. | B312660 <br><br> (Los Angeles County Super. Ct. No. 20STCV04867) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN APPELLATE JUDGMENT] |

THE COURT:

The opinion in this case filed on May 24, 2022 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), appellants' request for publication pursuant to California Rules of Court, rule 8.1120(a) is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

This order does not change the appellate judgment.

_____

PERLUSS, P. J.            SEGAL, J.            FEUER, J.

2