Filed 12/30/24  Sameyah v. Gishi CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DARYOUSH SAMEYAH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RAMI GISHI,<br><br>    Defendant and Respondent. | B328651<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV24943) |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Wegman & Levin, Debra J. Wegman and Michael M. Levin for Plaintiff and Appellant.

Friedman[2] LLP, Steven R. Friedman and Michael E. Friedman for Defendant and Respondent.

_____

In March 2019, plaintiff and appellant Daryoush Sameyah was a Los Angeles Police Department (LAPD) sergeant.  When eating at a restaurant while off-duty, Sameyah visibly unholstered his service weapon during an argument with defendant and respondent Rami Gishi over the noise Gishi and others at his table were making.  Gishi reported the incident to police, stating among other things that Sameyah had pointed the gun at him.  Video from the restaurant confirmed Sameyah had drawn his firearm but did not show him point it at Gishi.  The Los Angeles City Attorney (city attorney) prosecuted Sameyah for simple assault, assault with a firearm, and brandishing a weapon based on his conduct at the restaurant.  A jury found Sameyah not guilty of all charges.

After his acquittal, Sameyah brought this civil action against Gishi and his employer, the car dealership Keyes European, LLC (Keyes).  Sameyah alleged a single cause of action for malicious prosecution, asserting Gishi purportedly caused the criminal case against Sameyah by falsely telling police what occurred between them.  Gishi filed an anti-SLAPP[1] motion to strike the complaint, which the trial court granted.

Sameyah now appeals.  We conclude that Sameyah has not conclusively and indisputably demonstrated Gishi's statements to police were knowingly false or that Gishi's conduct was otherwise

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation."  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)  For clarity, we also refer to a "SLAPP" or "anti-SLAPP" motion as "a special motion to strike"—the language used in the statute (Code Civ. Proc., § 425.16, subd. (b)(1)).  All unspecified statutory references are to the Code of Civil Procedure.

illegal, and thus Gishi's statements are protected conduct under the anti-SLAPP statute. We further conclude Sameyah fails to demonstrate his malicious prosecution claim has minimal merit as required by the second prong of the anti-SLAPP statute. The independent investigation by law enforcement and the city attorney's independent charging decision negate the required element for malicious prosecution that Gishi caused the pursuit of criminal charges against Sameyah. We therefore affirm.

## BACKGROUND

### A.     Events Giving Rise to Sameyah's Criminal Trial

On March 25, 2019, Gishi and six other Keyes employees, Gerard Kevylian, Tigran Abeghyan, Ilia[2] Shapiro, Dante Wood, Andre Butler, and Vahe Mnatsakanyan were at a restaurant. Sameyah, his wife Tracey,[3] his children Soraya and Amir, Soraya's boyfriend Fadi Hawatmeh, and Amir's girlfriend Nikki Tahmaseby were seated at an adjacent table. The evidence submitted in connection with the anti-SLAPP motion shows the parties and witnesses described differently what occurred next.

According to law enforcement interviews of Sameyah's family members, the Keyes employees were drunk, loud, and vulgar. Sameyah calmly stood up, walked towards their table, and asked the group to quiet down and stop using profanity. Gishi responded aggressively and cursed at Sameyah. Gishi then stood up, clenched his fists, and raised his arms in an aggressive

---

[2] Shapiro's first name is sometimes spelled "Ilya" in the record.

[3] As Sameyah's family members share his last name, we refer to them by their first names to avoid confusion.

3

stance. According to Amir, Gishi stated that he had a gun. Amir felt worried for his father, who was using a cane, and stood in an attempt to calm everyone. At one point, Wood approached Sameyah's table to try to deescalate the situation. Amir told Wood, "[M]y dad is a police officer, he does have a gun with him." Soraya saw her father unholster his gun and hold it behind his leg. She had a clear, unobstructed view of him holding the gun and never saw him point it at Gishi. Sameyah kept the barrel of the gun pointed down the entire time. She noted her father did not identify himself as a police officer or show his badge. Tracey stated Sameyah did not curse or draw his weapon, although she "saw some hand motion behind his back." Amir did not see his father unholster or holster his gun or point it at anyone. Sameyah declared that he never pointed his gun at Gishi.

Gishi reported the incident to law enforcement on March 27, 2019. According to a police report dated April 4, 2019, Gishi stated that Sameyah told Gishi and others at Gishi's table to be quiet, and Gishi responded to Sameyah to mind his own business. Sameyah stood up and approached Gishi's table. Gishi also stood up. Sameyah pulled out a gun, pointed it at Gishi, and stated "let's go outside." Gishi told Sameyah to put the gun away and he would go outside. Gishi returned to his table, and Sameyah and his family left the restaurant.

On April 3, 2019, Gishi spoke with the police again and "advised he would like to pursue criminal prosecution in this matter."

At some point a few days after the incident, Soraya and her boyfriend Hawatmeh went to Keyes. Gishi was not present at the time. According to Shapiro, Hawatmeh screamed at Shapiro and then jumped in his car and sped off. Shapiro learned from

4

the service department that Hawatmeh had dropped off a car for service owned by someone named Sameyah. Using Keyes's records, Shapiro identified Sameyah as the registered owner of the car. Gishi thereafter gave that information to police.

On April 4, 2019, Gishi identified Sameyah from a photographic line-up as the person who had pointed a gun at him. The reports concerning Gishi's March 27, April 3, and April 4, 2019 interactions with police do not state that Gishi told police that Sameyah threatened to kill or shoot him.

On April 4, 2019, police interviewed Kevylian. At the restaurant, he sat next to Gishi at a 90-degree angle with his back to Sameyah's table. Kevylian heard Sameyah tell Gishi and others at their table to shut up. Sameyah approached their table, lifted up his shirt to reveal a firearm in a black holster, and stated, "I'm a policeman, I'll shoot you." Kevylian looked away in fear; before he looked away, he did not see Sameyah point the gun at anyone. Kevylian identified Sameyah from a photographic line-up.

On April 4, 2019, the restaurant's owner provided police with a surveillance video of the incident; the video had no sound. The reporting officer described, "I reviewed the footage and observed [Sameyah] was involved in a conversation with [Gishi] and the others at [Gishi]'s table. . . . During the incident [Sameyah] stands up and walks over to [Gishi]'s table and appears to be speaking to several of the people at the table. [Gishi] stands up and points towards [Sameyah]'s table, at which time [Sameyah] can be seen lifting his shirt and unholstering a black firearm. [Sameyah] appears to hold the firearm behind his leg momentarily and then re-holstered the firearm." The police

5

report concluded, "The video footage was consistent with [Gishi's] and [Kevylian]'s statements . . . ."

Our review of the surveillance video indicates that the interaction between the two tables begins with Sameyah looking towards Gishi's table. Abeghyan looks back at Sameyah. Sameyah then speaks to wait staff while gesturing towards Gishi's table. Eventually, Sameyah approaches Gishi's table and while he is speaking to them, Hawatmeh stands and looks towards Gishi, who is seated. Gishi then stands up and steps towards Hawatmeh, pointing a finger at him. Gishi's attention is then drawn to Sameyah, who is reaching back with his right arm. Sameyah's elbow moves up and behind him. Gishi sits back down. A portion of Sameyah's arm, including his right hand, is obstructed from view for approximately four seconds by Amir who is standing between Sameyah and the camera. Sameyah steps towards Gishi. Amir steps away, and the video shows Sameyah's arm is pointed downward, straight, with his hand behind his leg. Sameyah stays in this position for about three to four seconds before he holsters his gun, an action which is captured clearly on the video. After Sameyah puts his gun away, he lunges toward Gishi. For the next approximately 30 seconds, Sameyah steps towards Gishi, away from Gishi, and then back towards him again, alternatively pointing his finger at Gishi, leaning over Gishi, and making motions with his right hand and fingers. The two are in close proximity to one another before Sameyah eventually steps back to his table. Shapiro attempts to approach Sameyah and Amir blocks him. Shapiro points around Amir in Sameyah's direction. Abeghyan urges Shapiro to return to his seat. Sameyah and his party then leave, except for Amir who remains to pay the bill.

As Sameyah was an LAPD sergeant at the time of the altercation, the matter was transferred to the Internal Affairs Group (IAG) for further investigation. IAG interviewed a waitress at the restaurant on April 19, 2019, and on May 17, 2019, interviewed Mnatsakanyan, Abeghyan, Butler, Kevylian, and Shapiro.

The waitress stated that the Keyes table ordered two pitchers of beer and two to three bottles of hot sake to share between the seven of them. They were at the restaurant for approximately an hour before Sameyah and his party arrived. She could not seat Sameyah's party anywhere but next to the Keyes table. Sameyah was upset by the behavior of the men at the next table. He told the waitress that she should not serve them more alcohol because they were already drunk. The waitress told IAG that she had been a waitress for about four years, had experience in determining when to stop serving alcohol to people who were too inebriated, and that the Keyes table had not yet reached that point. She recalled that her coworker told the Keyes table they were making too much noise, and that eventually people from both tables began yelling. She saw Sameyah had a gun, but she was not sure if he pointed it at Gishi or kept it pointed down. She did not hear anyone threaten to kill or hurt anyone. Sameyah's family voluntarily left the restaurant.

According to Shapiro, Mnatsakanyan, and Abeghyan, Sameyah came to their table and angrily told them to quiet down. Shapiro and Mnatsakanyan each said that during the encounter, Hawatmeh was aggressive and yelled something along the lines of "I'll f**k you up." This caused Gishi to stand up. Shapiro, Mnatsakanyan, and Abeghyan did not see Sameyah holding a

weapon, did not hear Sameyah identify himself as a police officer, and did not see Sameyah show a badge.

Butler relayed that Sameyah was behaving in a threatening manner towards Shapiro, which caused Gishi to stand up. Butler did not see Sameyah point a gun at anyone or hear Sameyah state he was a police officer.

Kevylian's IAG interview was consistent with his April 4, 2019 statement to police. He saw Sameyah approach Abeghyan and then Gishi. Gishi told Sameyah "to go f**k himself" and return to his table. Kevylian saw Sameyah reveal his holstered gun by lifting his shirt and placing his hand on the gun. He heard Sameyah say he was a cop and he would shoot Gishi. Kevylian put his head down. Gishi did not threaten Sameyah. Kevylian saw Hawatmeh come forward and yell at Woods and Gishi. Woods and wait staff tried to calm Hawatmeh down.

On November 22, 2019, the city attorney filed a misdemeanor complaint against Sameyah for assault with a firearm (Pen. Code, § 245, subd. (a)(2)), simple assault (*id*., § 240), and brandishing a firearm (*id*., § 417, subd. (a)(2)).

On September 17, 2020, the city attorney added a fourth count against Sameyah for making a false report to a peace officer (Pen. Code, § 148.5, subd. (a)). Although the record is unclear, it appears this fourth count related to a telephone call Sameyah purportedly received from a number at Keyes in December 2019 during which the caller said "You're gonna die." Sameyah reported the alleged threat to law enforcement. When police obtained a recording of the call from Keyes, it did not include the threatening statement.

Before trial, the prosecution moved to dismiss count four pursuant to Penal Code section 1385. The court granted the

motion; nothing in the appellate record sets forth the basis of the prosecution's request or the court's reasoning for granting the dismissal.  Sameyah contends, without any citation to the record, that the dismissal resulted from a report by a forensic analyst he hired who concluded that someone had altered the audio file related to the call.

## B.    The Criminal Trial

On November 17, 2021, counsel delivered opening statements in Sameyah's criminal trial.  Although several witnesses testified, including Gishi and Kevylian, the record includes only portions of Gishi's testimony and portions of the testimony of a defense expert in police procedure, Scott Allen DeFoe.  The record does not contain reporter's transcripts for the opening statements or closing arguments from either the People or the defense.

According to the excerpts in the record, Gishi testified that Sameyah "put his hand to the holster, pulled the gun out, aim[ed] it [at] [Gishi] directly and said, 'I will kill you.' "  During cross-examination, Sameyah's counsel asked Gishi to identify when on the video Sameyah pointed a gun at him.  Gishi was not able to do so, and explained, "It's very dark.  I cannot see exactly over here.  He did something.  This guy was hiding it so you couldn't see him, but there was a gun pointed at me."  Gishi testified that he spoke to the city attorney multiple times about the case.[4]

_____

[4] The only evidence in the record indicating who initiated the contact between Gishi and the city attorney or what was discussed during those interactions is Gishi's declaration.  Gishi states the city attorney's office telephoned to inform him that it would prosecute Sameyah.  Gishi later called the city attorney to

Sameyah's counsel asked Gishi whether he told the city attorney that the police notes of his interview needed to be modified because he, not Sameyah, had said, "Let's go outside." Gishi answered, "I said it. [Sameyah] didn't say it," and that whoever wrote it down got it wrong.

DeFoe testified that based upon his review of the restaurant's videotape, Gishi exhibited prefight indicators, including his clenched fists and stance. DeFoe further testified that Gishi's right hand went behind his back to where he would have been wearing a gun if he had one. In contrast, Sameyah did not appear to stand in a manner consistent with aiming a gun at someone. He opined that Sameyah's actions were consistent with police training and did not constitute "a reportable use of force by the police department."

According to the court's minute order, the jury deliberated for nearly four hours over the course of two days. On November 30, 2021, the jury found Sameyah not guilty of all three counts.

## C.    Sameyah's Civil Complaint

On August 2, 2022, Sameyah sued Gishi and Keyes for malicious prosecution. The complaint alleges that Gishi and other Keyes employees went to the restaurant as part of a work celebration. They were drunk, loud, and vulgar. Sameyah, who had broken his ankle and needed a cane to walk, was there with family members. Sameyah asked restaurant staff "to get the [Keyes employees] to behave with decorum," but the staff was unable to do so. Sameyah then asked the table to enjoy

ask whether he had to appear for trial in response to the subpoena he received and was told he had to appear.

10

themselves but to cut out the profanity. Gishi responded, "I will f**k you up and I have a gun." Hawatmeh asked Gishi not to speak to Sameyah in that manner. In response, Gishi lunged towards Hawatmeh, called him a terrorist and told him, "I'll f**k you in the ass." The complaint omits any reference to Sameyah unholstering his gun.

The complaint alleges Gishi and Keyes are liable for malicious prosecution because they "falsely accus[ed] [Sameyah] of multiple crimes, including without limitation, brandishing, simple assault, assault with a deadly weapon and violation of Penal Code section 148.5 [knowing false report to police]." The complaint further alleges that Gishi and Keyes "were actively involved in causing . . . Sameyah to be arrested and prosecuted." They "hid, concealed, altered and destroyed evidence to falsely accuse and prosecute . . . Sameyah. This is demonstrated by anomalies in the audio which based on information and belief, the prosecutor reviewed and determined contained false information as well, leading to the dismissal of the [section] 148.5 charge against [him]." "The charges were false," and Sameyah was cleared of all criminal charges. The complaint alleges the conduct of Gishi and Keyes was a substantial factor in causing Sameyah harm, including forcing him to incur fees and costs to defend himself in the criminal matter. The complaint does not refer to Gishi testifying at Sameyah's criminal trial or assert any claim related to that testimony.

## D.    Gishi's Special Motion to Strike

### 1.    *The Parties' Arguments*

Gishi filed a section 425.16 motion to strike Sameyah's complaint in its entirety. He observed that courts have uniformly held malicious prosecution claims arise from protected activity,

11

and that his statements about what occurred were protected activity because they were "made before a . . . judicial proceeding" or "in connection with an issue under consideration . . . by a[n] . . . official proceeding authorized by law" as described in section 425.16, subdivision (e)(1) and (2).  He argued his statements to the police and during the criminal trial had been truthful, and that in any event, courts have found even potentially false accusations to be protected activity unless evidence conclusively establishes the statement's falsity.

As to the second prong of the anti-SLAPP test, Gishi argued that Sameyah could not adduce evidence showing a probability that Sameyah would prevail on his malicious prosecution claim.  Gishi argued he did not commence or direct Sameyah's criminal prosecution; the police investigated, and the city attorney filed charges.  Nor could Sameyah demonstrate that he was prosecuted without probable cause or that Gishi acted with malice.  Rather, Gishi's involvement was limited to truthfully reporting the matter to the authorities, responding to questions from LAPD and IAG during their investigations, and testifying at trial pursuant to a subpoena compelling his appearance.  LAPD and the city attorney had the video footage of the incident as well as witness interviews and could satisfy themselves whether there was probable cause to bring charges against Sameyah.  Gishi further argued that the litigation privilege under Civil Code section 47, subdivision (b) protected his communications with the police and his testimony.

Gishi submitted a declaration averring that he told the police the truth, testified truthfully at trial, and that his involvement in the prosecution was limited to reporting the matter and serving as a witness.  Gishi declared that the city

12

attorney "inform[ed] [him] that the [c]ity [a]ttorney had decided to criminally prosecute . . . Sameyah based upon the video the police had obtained as well as the eyewitness accounts of the other people at the restaurant on March 24, 2019."[5] Gishi also submitted, among other things, copies of the surveillance video, the police reports (including the one in which authorities concluded "[t]he video footage was consistent with [Gishi's] and [Kevylian]'s statements"), and transcripts of witness interviews by law enforcement.

In opposition, Sameyah argued that Gishi lied when he told the police that "Sameyah pointed a gun at . . . Gishi," and under *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, making a false police report is not protected activity. Sameyah argued that "[a]s a result of the false information provided by [d]efendant Gishi, . . . criminal charges were brought against [Sameyah]." "Gishi

_____

[5] Sameyah objected to Gishi's statement relaying what the city attorney had told him as hearsay. The record does not include a ruling on this objection or any other evidentiary objections, and lacks any indication that Sameyah asked the court to rule on his objections after he made them. Sameyah did not renew his objection on appeal. Accordingly, we may consider Gishi's statement. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 [explaining in a summary judgment case that objections not ruled on are deemed overruled, preserving the issue for appeal, but "with the burden on the objector to renew the objections in the appellate court," fn. omitted]; *Flatley v. Mauro* (2006) 39 Cal.4th 299, 307, fn. 4 [explaining in an anti-SLAPP context that when a trial court does not rule on evidentiary objections and the record does not reveal that the objecting party pressed for a ruling, the "objections are therefore deemed forfeited and we consider [the potentially inadmissible] declarations in their entirety"].)

was actively involved in concealment, and altered evidence to falsely accuse [Sameyah] of pointing a gun at him, so that [Sameyah] would get arrested and prosecuted." Based on DeFoe's trial testimony, Sameyah also argued that he acted in self-defense and that unholstering his gun and holding it behind his leg was not a use of force reportable to LAPD. Sameyah did not address whether Gishi's trial testimony was protected activity.

As to the second prong, Sameyah argued Gishi commenced and directed the prosecution against Sameyah because he sought to press charges and provided false information to the authorities. Sameyah claimed that the city attorney did not independently assess the evidence when bringing charges but instead relied on Gishi's false assertion that Sameyah pointed a gun at him. Sameyah also argued that Gishi and Keyes provided police with a " 'doctored' " recording of a telephone call from Keyes to Sameyah, causing the city attorney to amend the misdemeanor complaint to include a count against Sameyah for making a false police report.

Sameyah argued there was no probable cause to pursue the charges because the jury acquitted him and the city attorney dismissed count 4. He further argued that Gishi acted with malice because Gishi provided false information to the police, committed perjury at the criminal trial, claimed he sought medical treatment for the March 25, 2019 incident but never produced medical records to substantiate this claim, and "[e]ngaged in an [a]ssault on the Sameyah [f]amily, fueled by his [h]atred of Sameya's [f]uture [s]on[-]in[-l]aw that Gishi [m]istakenly [b]elieved was an Arab Muslim." (Underscoring

14

omitted.)  Sameyah cited no evidence in support of these arguments concerning malice.

### 2.    *The Trial Court's Ruling*

On February 17, 2023, the trial court granted Gishi's special motion to strike.  It found Gishi's report to the police was not "indisputably illegal" and thus was protected activity.  It also found Sameyah did not demonstrate a probability of prevailing because he could not satisfy the required element for his malicious prosecution claim that the criminal prosecution by the city attorney had been commenced at Gishi's direction.  The trial court did not address whether the litigation privilege protected Gishi's conduct.[6]

## DISCUSSION

## A.    General Legal Principles and Standard of Review

The Legislature enacted section 425.16 "[t]o combat lawsuits designed to chill the exercise of free speech and petition rights." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060.)  The anti-SLAPP statute provides that "cause[s] of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the

---

[6] The court's minute order indicates that the court denied Keyes's joinder in the anti-SLAPP motion.  Keyes is not a party to this appeal, and we thus consider only Gishi's special motion to strike.

15

plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

When considering whether to strike a claim, courts undertake a two-prong analysis. "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.]" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) Second, "[i]f the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt*, *supra*, at p. 384.)

We review de novo the trial court's grant or denial of a special motion to strike under the anti-SLAPP statute. (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1067.)

## B. Prong One: Sameyah's Cause of Action for Malicious Prosecution Arises from Protected Activity

" ' " 'The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding.' " ' [Citation.]" (*Area 55, LLC v. Nicholas & Tomasevic, LLP* (2021) 61 Cal.App.5th 136, 151.) However, if "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 320.)

The appellate court in *Lefebvre v. Lefebvre*, *supra*, 199 Cal.App.4th 696 applied *Flatley* to hold an indisputably false police report was not protected activity. In *Lefebvre*, a wife and a

16

witness filed false police reports that the husband had threatened to kill the wife and their children. (*Id*. at p. 700.) Nine days after receiving the report, "acting in reliance upon the criminal reports from [the wife] and [the witness]," authorities charged the husband with making a criminal threat. (*Ibid*.) At the time of the verdict in the criminal trial, the jurors, "acting of their own volition," read a statement into the record that there was a " 'shocking' " " 'absence of any real investigation by law enforcement,' " " '[t]here was no credible evidence supporting the indictment,' " and that " 'prosecuting this as a crime was not only a waste of time, money, and energy, for all involved, but is an affront to our justice system.' " (*Ibid*.) The jury recommended restitution to the defendant. (*Ibid*.) The judge who presided over the criminal trial granted the husband's motion for a finding of factual innocence pursuant to Penal Code section 851.8, subdivision (e). (*Ibid*.) Based upon this record, the *Lefebvre* court determined the evidence conclusively established the wife's and witness's statements to police were illegal activity and thus not protected speech within the meaning of the anti-SLAPP statute. (*Id*. at pp. 701, 706.)

Relying on *Flatley* and *Lefebvre*, Sameyah argues Gishi's statements are not protected speech because Gishi violated (1) Penal Code section 118 by committing perjury at trial, (2) Penal Code section 132 by tampering with the recording of the December 2019 call from Keyes and providing that recording to police,[7] and (3) Penal Code section 148.5 by knowingly making a

---

[7] Neither Gishi nor Sameyah specifically addresses whether providing physical evidence, such as an audio recording, to police constitutes protected activity. Because providing an audio

17

false police report. We consider each of these alleged crimes below.

We begin with Penal Code section 118 and Gishi's allegedly perjurious testimony at trial. The first step of the anti-SLAPP analysis requires "identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral v. Schnitt*, *supra*, 1 Cal.5th at p. 396.) Sameyah's complaint does not refer to Gishi's trial testimony at all, let alone assert it as a basis for the malicious prosecution claim. Sameyah's allegations instead focus entirely on what occurred leading up to the criminal trial and do not reference what occurred during the trial other than Sameyah's acquittal. We thus need not consider whether the evidence conclusively demonstrated as a matter of law that Gishi committed perjury when he testified at trial because that conduct is not alleged.

Penal Code section 132 states, "Every person who upon any trial, proceeding, inquiry, or investigation whatever, authorized or permitted by law, offers in evidence, as genuine or true, any . . . instrument in writing, knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of felony." Sameyah contends the evidence conclusively shows Gishi violated this statute because, during the investigation, "police received a recording of the call made by the Keyes . . . telephone system" that "purported to disprove [Sameyah's] report that he was threatened," and Sameyah's expert opined "the audio file is not a

_____

recording to police as part of an ongoing investigation is akin to making a statement to police, we conclude for purposes of this case it is protected activity. (See *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 941 ["The law is that communications to the police are within SLAPP"].)

18

continuous, original, authentic recording." None of this conclusively establishes that Gishi acted illegally. Nothing in the record indicates that Gishi made any alterations to the recording or that Gishi provided the recording at issue to the police. Sameyah argues we should infer that Gishi altered the evidence or directed someone to do so. Sameyah interacted with multiple Keyes employees at the restaurant. To single out Gishi and engage in the proposed speculative leaps requested by Sameyah disregards the requirement that evidence of illegality be "conclusive" to remove otherwise protected conduct from the anti-SLAPP statute. (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 320.)

We turn lastly to Penal Code section 148.5, which makes it a misdemeanor to make a knowingly false report to police. Penal Code section 148.5's " 'requirement of scienter protects witnesses who honestly misperceive facts' " while punishing those who knowingly give false information to police officers. (*People v. Stanistreet* (2002) 29 Cal.4th 497, 511.)

Sameyah argues the following evidence conclusively demonstrates that Gishi knew his statements to police were false: Gishi (1) did not report the incident to police until two days after it occurred; (2) repeatedly demanded Sameyah be prosecuted; (3) failed to recant his statement that Sameyah pointed the gun at him after learning the videotape contradicted that statement; (4) used Keyes's computer files to assist police in identifying Sameyah as the perpetrator; (5) hired a lawyer to file a civil suit against Sameyah; (6) tampered with the audio recording of the December 2019 call from Keyes; and (7) testified falsely at trial.

These contentions taken separately or together fail to conclusively demonstrate Gishi made a knowingly false statement to investigators, or even that he made a false

19

statement. Items (1), (2), (4), and (5) do not tend to prove that Gishi knowingly lied to police, much less conclusively demonstrate that fact. Also, as to item (2), the record evidence indicates that Gishi told police that he wanted to pursue a prosecution of Sameyah only once, on April 3, 2019, and Sameyah does not cite to any other requests in the record.

As to item (3), Sameyah cites no evidence indicating that Gishi saw the surveillance video before he spoke with the police or indeed, any time prior to the criminal trial. Sameyah states only, "It is reasonable to infer that at some point [Gishi] learned that the videotape contradicted his story." The video largely corroborates Gishi's statements to police. Sameyah indisputably drew his firearm during a verbal altercation with Gishi and aggressively approached while Gishi was seated. Although the video does not show Sameyah point his gun at Gishi, it also does not continuously show Sameyah's arm. Even if we infer Sameyah did not point his gun at Gishi during the portion of the video when Sameyah's arm was hidden, the video does not conclusively establish that at the time Gishi spoke to police he knew this allegation was false and not simply a misperception of an emotionally charged incident.

As to item (6) concerning the audio recording, as previously explained Sameyah adduced no evidence linking Gishi to the purported alterations to that audio recording or its provision to law enforcement. Thus, that recording fails to show that Gishi knowingly provided a false police report.

As to item (7), Sameyah appears to suggest that Gishi's recalcitrance to acknowledging Sameyah did not point the gun at him when confronted with the video at trial could cause a trier of fact to doubt Gishi's credibility and thereby infer that he

20

knowingly lied to police when describing the incident two and a half years earlier. Even if true, that does not conclusively establish the issue as a matter of law as *Flatley* requires.

Because the evidence does not conclusively demonstrate that Gishi's conduct in providing information to police was illegal as a matter of law, Gishi's statements to police were protected activity within the meaning of the anti-SLAPP statute.

## C. Prong Two: Sameyah Did Not Demonstrate a Probability of Prevailing on His Claim for Malicious Prosecution

### 1. *Guiding Principles Concerning Prong Two*

A "plaintiff's second-step burden is a limited one. The plaintiff need not prove [his] case to the court [citation]; the bar sits lower, at a demonstration of 'minimal merit' [citation]. At this stage, ' "[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." ' [Citations.]" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891.) Although a plaintiff need only demonstrate minimal merit to his claim (see *Navellier v. Sletten* (2002) 29 Cal.4th 82, 94), the plaintiff is "required to produce admissible evidence from which a trier of fact could find in his favor, as to every element" of the challenged claim. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721, italics omitted.)

2. *Elements of a Cause of Action for Malicious Prosecution*

In the context of this case, "[m]alicious prosecution 'consists of initiating or procuring the arrest and prosecution of another under lawful process, but from malicious motives and without probable cause.' " (*Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 720, italics omitted.) "Although a criminal prosecution normally is commenced through the action of government authorities, a private person may be liable for malicious prosecution under certain circumstances based on his or her role in the criminal proceeding. 'The relevant law is clear: "One may be civilly liable for malicious prosecution without personally signing the complaint initiating the criminal proceeding." [Citation.] " 'The test is whether the defendant was actively instrumental in causing the prosecution.' " [Citations.] "Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that [the] plaintiff has committed a crime." (*Sullivan v. County of Los Angeles*, *supra*, at p. 720.)' [Citation.]" (*Zucchet v. Galardi* (2014) 229 Cal.App.4th 1466, 1481-1482; see CACI No. 1504 [defining active involvement as falsely reporting facts to police that indicate the plaintiff committed a crime after learning that there was no probable cause that the plaintiff had committed a crime].)

To prove his cause of action for malicious prosecution, Sameyah must demonstrate that the criminal proceeding was (1) commenced by or at the direction of Gishi, (2) initiated without probable cause, (3) initiated with malice, and (4) concluded in Sameyah's favor. (*Greene v. Bank of America*

(2015) 236 Cal.App.4th 922, 931.)  Sameyah must also demonstrate he was harmed, and that Gishi's conduct was a substantial factor in causing that harm.  (See CACI No. 1500.)

" ' "When . . . the claim of malicious prosecution is based upon initiation of a criminal prosecution, the question of probable cause is whether it was objectively reasonable for the defendant . . . to suspect the plaintiff . . . had committed a crime." [Citation.]' " (*Greene v. Bank of America, supra*, 236 Cal.App.4th at p. 931; see *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 ["the probable cause element calls on the trial court . . . to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable"].)

" 'The "malice" element . . . relates to the subjective intent or purpose with which the defendant acted in initiating the prior action.  [Citation.]  The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice . . . .' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)  It "is not limited to actual hostility or ill will toward [the] plaintiff but exists when the proceedings are instituted primarily for an improper purpose." (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383.)

3.      *The City Attorney Filed Charges After an Independent Investigation*

Sameyah has not made a showing of minimal merit that Gishi was actively involved in *causing* Sameyah to be prosecuted.  " '[I]n most cases, a person who merely alerts law enforcement to a possible crime . . . is not liable if . . . law enforcement, on its own, after an independent investigation, decides to prosecute.' " (*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 452, quoting *Williams*

23

*v. Hartford Ins. Co.* (1983) 147 Cal.App.3d 893, 898.) A prosecutor's independent investigation acts as "a superseding cause" and "protects a complainant from liability for malicious prosecution." (*Lugo v. Pixior, LLC* (2024) 101 Cal.App.5th 511, 515.) As the *Lugo* court stated in holding the trial court should have granted an anti-SLAPP motion striking a malicious prosecution claim, it is an "airtight defense that, before the [prosecuting entity] filed charges, police conducted an investigation that was independent of" the defendant. (*Ibid*.)

Here, law enforcement conducted just such an independent investigation. Police did not simply take Gishi at his word and call it a day without doing anything else. They spoke to multiple witnesses who participated in and/or witnessed the altercation, including witnesses favorable to Sameyah. Police obtained a video of the incident early in their investigation, on April 4, 2019, long before the city attorney filed any charges, and reviewed it to see what it showed.[8] The video indisputably demonstrated that Sameyah drew and exhibited his firearm during his verbal altercation with Gishi. It also established that Sameyah

---

[8] The record does not indicate when investigators provided the video to the city attorney. However, a prosecutor has a duty not to institute a charge that he or she knows is not supported by probable cause. (Rules of Prof. Conduct, rule 3.8.) Naturally related to this duty is that a prosecutor reviews the available evidence prior to filing charges. We presume an official duty is regularly performed unless specific evidence overcomes that presumption. (See *In re Jenkins* (2023) 14 Cal.5th 493, 514, citing Evid. Code, § 664.) Sameyah does not argue the city attorney did not review the video before filing the complaint against him. To the contrary, he presumes the city attorney did so before filing charges.

aggressively stepped towards Gishi, stood near him, and spoke to him in an angry manner. It did not show that Sameyah pointed his gun at Gishi. Indeed, no witness save Gishi asserted that Sameyah pointed a gun at Gishi.

After this investigation, and after the police provided the investigative results to the prosecutor, the city attorney filed a criminal complaint against Sameyah on November 22, 2019. As a matter of law, this independent investigation and the city attorney's actions after it "completely shielded [Gishi] from liability," as "the initiative and discretion governing the investigation resided" with governmental entities. (*Lugo v. Pixior, LLC*, *supra*, 101 Cal.App.5th at p. 517.)

Sameyah suggests the city attorney's investigation was not independent because Gishi badgered the city attorney into filing charges. Sameyah contends that Gishi reported the incident to police, said he wanted Sameyah criminally prosecuted, gave to police Sameyah's personal identifying information, had multiple communications with law enforcement, and tried to get the city attorney to change the content of the transcript of his interview (which is not included in the record) as to who said "let's go outside."[9] Sameyah argues that based on these actions "it is reasonable to infer [Gishi] pressured the prosecutor."

_____

[9] Sameyah has not demonstrated why who said, "let's go outside," is relevant to the independence of the law enforcement investigation. In any event, it is clear from the video and witness interviews that both Sameyah's party and Gishi's party had moments of speaking aggressively towards the other. Sameyah also argues Gishi's alleged alteration of the audio recording of the December 2019 call demonstrates he was actively instrumental in Sameyah's prosecution. As discussed above, there is no

Even when we draw all inferences from this evidence in Sameyah's favor, it does not demonstrate a probability that Sameyah can establish the city attorney failed to conduct an independent investigation. Contact between the ostensible victim and law enforcement "does not negate independence" as investigators necessarily need to speak with such individuals. (*Lugo v. Pixior, LLC*, *supra*, 101 Cal.App.5th at p. 517.) It is not reasonable to infer from the contacts between Gishi and police that Gishi sought impermissibly to pressure law enforcement. And even if we posit that Gishi did try to pressure the prosecutor through these actions, there is no evidence indicating that anyone capitulated to that pressure.

Sameyah next suggests the investigation was not independent because it relied on Gishi's false claim that Sameyah pointed the gun at Gishi in prosecuting Sameyah.[10] A criminal prosecution that depends even in part on a false allegation may potentially give rise to a malicious prosecution claim. (See *Singleton v. Perry* (1955) 45 Cal.2d 489; *Greene v. Bank of*

_____

evidence that Gishi altered the recording or that he was the one who gave it to police.

[10] Sameyah argues that because he was a police officer and thereby entitled to use force reasonable under the circumstances, the prosecution against him could have proceeded only if he had pointed the gun at Gishi. This argument assumes without support that the only way Sameyah's conduct could be deemed an unreasonable use of force is if he pointed the gun at Gishi. Where an appellant fails to support an argument with appropriate legal authority and reasoned argument, we do not consider it. (E.g., *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 621.)

*America* (2013) 216 Cal.App.4th 454, 466.)[11]  But Sameyah, who has the burden to adduce evidence to demonstrate a probability of prevailing (*Lee v. Kim*, *supra*, 41 Cal.App.5th at p. 721), offers no evidence to suggest that police or the prosecutor relied on Gishi's claim that Sameyah pointed a gun at Gishi.  For example, the record does not include the opening and closing statements from the criminal trial, which would have reflected the prosecution's theory of the case.

Nothing in the information suggests the filed charges relied on Sameyah pointing a gun at Gishi.  Indeed, whether Sameyah

---

[11] Sameyah relies on *Greene v. Bank of America*, *supra*, 216 Cal.App.4th 454 throughout his briefs.  There, a bank manager called 9-1-1 and falsely reported that the plaintiff had threatened to blow up the bank.  The plaintiff was prosecuted for making a criminal threat.  Unlike the case before us, which includes video evidence of what occurred, *Greene* was " 'a he said, she said,' situation" between the bank manager and the plaintiff.  (*Id.* at p. 464.)  The opinion, however, does not describe law enforcement's investigation, and, thus, *Greene* is inapposite as to the impact of an independent investigation.  Further, the opinion is distinguishable because it was evident that law enforcement relied on the bank manager's falsehood in arresting and prosecuting the matter.  (*Id.* at p. 465.)  Here, such evidence is lacking.

Sameyah also relies on *Greene* to argue "that a defendant with—at best—some belief that a misdemeanor is being committed [cannot] make up evidence of an entirely different and much more serious crime."  (*Greene v. Bank of America, supra*, 216 Cal.App.4th at p. 466.)  Because we conclude Sameyah fails to demonstrate minimal merit to his argument that the prosecution relied on Gishi's claim that Sameyah pointed the gun, we need not consider that Gishi's police report included both correct and assertedly incorrect information.

pointed his gun at Gishi was entirely unnecessary to establish Sameyah's guilt on the charges filed against him. An assault pursuant to Penal Code section 240 "is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (*Ibid*.) In other words, it does not require use of a gun at all. Sameyah's actions sufficed to show probable cause for assault without any need to prove he pointed the gun at Gishi.

Assault with a firearm under Penal Code section 245, subdivision (a)(2) requires the use of a firearm but it does not require the defendant point the gun at the victim. The prosecutor must prove: "1. The defendant did an act with [a firearm] that by its nature would directly and probably result in the application of force to a person; [¶] . . . [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, [he] was aware of facts that would lead a reasonable person to realize that [his] act by its nature would directly and probably result in the application of force to someone; [¶] [and] [¶] 4. When the defendant acted, [he] had the present ability to apply force [likely to produce great bodily injury] to a person." (CALCRIM No. 875.) A defendant holding a gun in a position that enables him to use it before the other party can defend himself—as Sameyah did here by unholstering his weapon to have it at the ready—is sufficient. (See, e.g., *People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 210 ["displaying a gun . . . in the general direction of others is sufficient to provide the mens rea for an assault charge where there is animus between the defendant and the targeted party and/or the surrounding circumstances are fraught"].)

Similarly, the crime of brandishing pursuant to Penal Code section 417 does not require that the defendant point a gun at the

victim.  Rather, the prosecutor must prove:  "1. The defendant drew or exhibited a [firearm] in the presence of someone else; [¶] [and either] [¶] . . . [¶] 2. The defendant did so in a rude, angry, or threatening manner [or] [¶] . . . [¶] . . . The defendant [unlawfully] used the [firearm] in a fight or quarrel."  (CALCRIM No. 983.)  Here, there was ample evidence that Sameyah exhibited his firearm at the restaurant in a rude, angry, and/or threatening manner, and further did so during a quarrel, sufficient for the city attorney to state a legally tenable count of brandishing.

In addition to lacking legal support, Sameyah's argument that the prosecution depended on Gishi's claim that Sameyah pointed the gun at Gishi defies common sense.  It presumes in the absence of any corroborating evidence that a prosecutor necessarily relied upon the perception of a single witness under the influence of alcohol in deciding whether to bring charges and what charges to bring, rather than accounting for a contradictory video of the incident and the fact that no other witness said they saw Sameyah point his gun at Gishi.

Sameyah has not adduced evidence that the police and city attorney failed to conduct an independent investigation, and, thus, has not demonstrated a probability of prevailing as to the essential element that Gishi's allegedly false police report caused his prosecution.

4.    *Sameyah Adduced No Evidence That Gishi Was a Substantial Factor in Sameyah Being Charged with Making a False Police Report*

Lastly, Sameyah has not established a probability of prevailing based upon the city attorney's decision to amend the misdemeanor complaint to add a count for providing a false

29

report to law enforcement.  Sameyah contends this count arose because Gishi caused a doctored audio recording to be provided to law enforcement.  As stated previously, there is no evidence tying Gishi to the call, the purportedly doctored recording, or its provision to law enforcement.  Thus, Sameyah has failed to adduce any evidence that Gishi was a substantial factor in causing Sameyah harm arising from the call or the allegedly altered evidence.

## DISPOSITION

We affirm the trial court's order granting Gishi's special motion to strike pursuant to section 425.16.  Gishi is awarded his costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.          KLATCHKO, J.*

---

\* Judge of the Riverside County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.